# Exhibit A

# U.S. CUSTOMS AND BORDER PROTECTION

CBP DIRECTIVE NO. 5410-001B

DATE: March 18, 2009
ORIGINATING OFFICE: ▉
SUPERSEDES: CBPD 5410-001A, 9/8/05
REVIEW DATE: March 2012

## U.S. CUSTOMS AND BORDER PROTECTION
## OFFICE OF PUBLIC AFFAIRS
## ROLES, FUNCTIONS AND RESPONSIBILITIES

1. PURPOSE. To define guidelines relating to the disclosure of official U.S. Customs and Border Protection (CBP) information to accredited news organizations, mass media, published professional journals, and stakeholder groups. In addition, this directive establishes policy and assigns responsibility for the management of public affairs activities in CBP.

2. DEFINITIONS

2.1 Office of Public Affairs (OPA) – In this document, the term Office of Public Affairs or OPA refers to the functional office as a whole which includes Headquarters Office of Public Affairs, Field Public Affairs Specialists, and uniformed personnel who perform public affairs functions as a collateral duty. Uniformed public affairs personnel report to their permanent offices' chain of command for operational and administrative supervision.

2.2 Public Affairs Specialists (GS-1035) – PAS, whether assigned to Headquarters or to field locations, disseminate timely and accurate information to the public and to CBP employees through the media and other communication outlets while protecting sensitive, proprietary or personal information. In addition, Public Affairs Specialists serve as subject matter experts to CBP leadership regarding communications, community relations, media relations and crisis communications. PAS report to the Headquarters PAO for functional and administrative supervision, guidance, and overarching administrative support.

3. POLICY.

3.1 CBP shall cooperate with accredited local, national, and foreign news organizations, without favoritism, in the dissemination of official information while not compromising the DHS/CBP mission. Through its authorized spokespersons, the CBP Office of Public Affairs (OPA) shall provide timely and sufficient responses to news organizations and individuals to establish and maintain the public trust. Authorized individuals who release information shall exercise due care to preserve privileged information, protect the rights of individuals, and comply with applicable laws, including the Freedom of Information and Privacy Acts. Additionally, responses to news organizations and individuals shall be tempered by concerns for on-going investigations; sensitive foreign activities; operational factors; detection, targeting and selectivity

factors; techniques and capabilities; exchange of intelligence; and matters in litigation.

3.2     Unless otherwise delegated, official spokespersons for CBP are the Commissioner, Deputy Commissioner, Assistant Commissioners, (which includes the Chief of the Office of Border Patrol), the OPA and others appointed by the OPA. In matters involving statements on behalf of the Administration, the only spokesperson shall be the Commissioner.

3.3     The OPA shall serve as the news media's principal point of contact for CBP. The OPA shall coordinate with the Office of Training and Development to create and provide media/crisis communications training to official spokespersons and full-time and collateral public affairs specialists.

3.4     The issuance of all headquarters press statements, news releases and interviews, and journal articles and the scheduling of telephone and in-person interviews shall be coordinated in advance through the OPA. All media requests and releases of information in the field shall be coordinated with the appropriate field public affairs specialists (GS-1035 series employees).

3.5     CBP personnel who participate in events that may generate national media interest or have policy implications, such as delivering speeches, participating in panel discussions, writing for an outside journal or publication, shall notify the appropriate OPA specialist for guidance and resource materials. The field public affairs specialists shall be responsible for advising the Headquarters OPA as well as senior field leadership.

3.6     The OPA ensures consistency of messaging and compliance with appropriate branding standards of materials that will be used to represent the agency through external journal articles by employees, brochures, pamphlets, content and placement of specific information on the CBP website, public speaking engagements such as panel discussions, conferences, trade shows, and local and regional organization meetings. This does not include any materials related to litigation or ongoing legal matters, negotiations with government organizations, union negotiations, or internal office communications.

3.7     The OPA shall prepare and disseminate timely and accurate public information for internal and external use, and shall research, develop, and produce internal communication plans and tools to improve CBP operations. The OPA may provide access to writers, communications specialists, and others to assist with various communication needs. The OPA will also serve as a conduit to external events planning to ensure a consistent message is relayed between internal and external audiences.

3.8     CBP media and public affairs policy must be executed with discretion and the use of sound judgment, as every possibility cannot be predicted and covered by a written policy statement. However, the <u>unauthorized</u> disclosure of official information to the media may be the basis for criminal and civil sanctions, and administrative disciplinary action.

4.     AUTHORITIES.



4.13 5 U.S.C. §§ 552 Freedom of Information Act

4.14 5 U.S.C. §§ 552a Privacy Act

4.15 6 C.F.R. Part 5 DHS disclosure regulations

4.16 19 C.F.R. Part 103 CBP disclosure regulations

4.18 The Homeland Security Act of 2002, as amended, Pub. L. 107-296 (November 25, 2002), codified in Title 6, U.S. Code

5. RESPONSIBILITIES.

5.1    The Assistant Commissioner, OPA, is responsible for the operations of the office, has overall responsibility for CBP interactions with media and other public affairs programs and products, and reports directly to the Commissioner, CBP.

5.1.2   The OPA ensures that the Commissioner's public affairs programs are run properly and efficiently. The OPA is responsible for advising and assisting the Commissioner, Deputy Commissioner, and other CBP leaders on issues related to disseminating CBP information to the news media, the public, CBP workforce, and other government agencies.

5.1.3   The OPA (See definition section 2.2 - Headquarters, Field PAS, and uniformed Public Affairs Liaisons) is the single point of contact for all news media matters throughout CBP and is responsible for initiating and coordinating all CBP contact with the media.

5.1.4   The Headquarters OPA provides guidance to, and coordinates the activities of, field public affairs specialists and serves as CBP's coordinator with the Department of Homeland Security (DHS) public affairs office.

5.2    CBP personnel, including uniformed officers and agents assigned to conduct public affairs activity, will comply with guidance issued by OPA.

5.2.1   CBP offices with personnel performing public affairs duties shall ensure that those individuals receive OPA approved training, adhere to OPA Guidance, and conduct all public affairs related business in full coordination with the CBP OPA.

5.3    The OPA public affairs specialists will support the communication needs of their respective field leadership and report to the Assistant Commissioner for OPA.

5.3.1   No office within CBP or employee outside of the OPA should initiate contact with members of the media or press for reasons of official business without prior approval by the OPA. In the event that notification to the OPA cannot be made in advance, of the media contact, the OPA will be notified as soon as possible.
5.4    No office within CBP shall employ personnel with the purpose of communicating or working with the media or press, nor plan or execute any public affairs outreach without the approval of the Assistant Commissioner, OPA, or his delegee.

5.4.1   The OPA is responsible for the coordination, approval and dissemination of all official information to the public via the media and public affairs outreach activity (with the exception of Congress, state governors, state and local officials, and other governments). Public Affairs personnel are responsible for the disclosure of official information regarding CBP activities within their area of responsibility. Matters potentially involving national media attention must promptly be reported to and coordinated through OPA.

5.4.2   The OPA manages and oversees the Publications Review Board and agency branding to ensure accurate and relevant information is released to public entities. The Board reviews any printed material intended for external distribution. Field public affairs specialists are responsible

for reviewing all materials that will be used regarding CBP activities within their area of responsibility. External information sharing to the media involving CBP policy must be coordinated with the OPA.

5.4.3   The OPA is responsible for the creation of agency magazines, newsletters, and other agency-wide distribution of public information to the internal audience via established channels, including informational television programming.

5.4.4   The OPA manages and plans for appropriate public affairs activities related to operational plans; accordingly, all CBP operational and program offices will coordinate with OPA in the course of operational planning, as appropriate (i.e., hurricanes, tabletops, enforcement operations).

5.4.5   In developing agency operations, the OPA will ensure that CBP is prepared to respond accordingly.

5.4.6   Public Affairs personnel are responsible for the public affairs annex, when one is required to Operations Orders during operational planning.,

5.5   It is the responsibility of the OPA to inform the public of the identity of CBP and its missions and goals.

5.6   All offices within CBP must coordinate with the OPA on all external contracts that support public affairs activities.

5.7   The OPA ensures that the office will not release to the public any material that is classified, law enforcement sensitive, private or proprietary information or information relating to matters in litigation or ongoing legal matters as directed in the Freedom of Information Act, Privacy Act, and other relevant law, regulation, or policy. Where there are restrictions on release or dissemination of information, offices providing such information shall advise OPA of these restrictions and ensure that documents are appropriately marked.

6.   PROCEDURES.

6.1   CRIMINAL PROCEEDINGS:

6.1.1   The disclosure of official enforcement information to the news media will be fully coordinated with the appropriate office or agencies.

6.1.1.1 In matters involving post-complaint or post-indictment arrests and seizures, all statements, comments and news releases will be coordinated with the appropriate U.S. Attorney prior to release.

6.1.1.2 No information shall be disclosed which details grand jury proceedings or prejudices

either potential or on-going criminal actions.

6.1.1.3 At no time shall any CBP personnel furnish any statement or information to influence the outcome of a trial. ███████████████████████████████████
███████████████████████████████████



6.1.3 There may be situations in which these proscriptions will limit the release of information which would not be prejudicial under the particular circumstances. If a CBP official believes that in the interest of the fair administration of justice, the law enforcement process, or the homeland security needs of the United States, information beyond these guidelines should be released in a particular case, he or she shall request the permission of the Commissioner or

designee and, if the matter is to be referred or has been referred for prosecution, he or she will coordinate with the appropriate Department of Justice officials to do so. CBP officials may also consult with the Office of Chief Counsel for legal advice in such circumstances.

6.2     MEDIA REQUESTS TO PHOTOGRAPH SUSPECTS

6.2.1    Photographing of suspects /detainees by news organizations in public places or in transit is neither encouraged nor discouraged, but the individuals in CBP custody shall not be posed. Upon request of the media, mug shots of individuals in CBP custody may be provided in the interest of public safety, (i.e. to assist in the apprehension fugitives, developing investigative leads, crime deterrence, etc.) To ensure the integrity of investigations and judicial process, requests for mug shots should be coordinated with the appropriate law enforcement agency.

6.2.2    When news organizations arrive at the scene of an enforcement action in progress without prior CBP knowledge, CBP personnel shall not interfere with photographing suspects in public places or in transport. Generally, other than by reasons of judicial order or the specific need to take reasonable steps to limit activity of the news media if such activity will endanger the safety of CBP personnel or the public, or reveal CBP law enforcement techniques. CBP personnel should not prevent the lawful efforts of the news media to photograph, tape, record, or televise an enforcement action from outside a designated perimeter as long as the CBP-controlled area has not been breached.

6.2.3    Decisions to allow any photographing, videotaping or filming by the media at CBP facilities shall be made in consultation with the appropriate Public Affairs Specialist and with the concurrence and control of the appropriate CBP supervisor.

6.2.4    Detention of persons or media and/or the detention of recording equipment, film or notes are prohibited unless the owner or operator of such materials has violated federal law, unlawfully breached the security of a CBP facility, or has endangered the safety of CBP personnel.

6.3     CUSTOMS AND BORDER PROTECTION ENFORCEMENT ACTIONS – ARRESTS, SEIZURES, SEARCH WARRANTS, SURVEILLANCE

6.3.1    In cases in which a search warrant is to be executed, no advance information shall be provided to the news media about actions to be taken by law enforcement personnel, nor shall media representatives be invited to be present.

6.3.2    If the media arrive at the scene of enforcement actions, the officer in charge (or designee) or the OPA representative shall be the only authorized spokespersons within the previously stated guidelines. Authorized spokespersons may provide public information after safeguarding the integrity of the enforcement action and ensuring the safety and protecting the identity of participating law enforcement officers.

6.4     CIVIL PROCEEDINGS

6.4.1 Guidelines for civil cases (information concerning fines, penalties, and forfeitures cases) in 19 C.F.R. 103.32 (and, to the extent the matter has been referred and is handled by the Department of Justice, in coordination with the appropriate Justice Department officials acting pursuant to 28 C.F.R. 50.2 (c) or successor regulations) shall be followed.

6.4.2 It is the policy of CBP to seek to deter violations of 19 USC §1592 and other customs and immigration laws by making known, when appropriate, general information about penalty and forfeiture actions taken by the agency.

6.4.3 After the assessment of a civil penalty, payment of a mitigated amount or judicial action, the identity of the violator; the section of the law violated and the nature of the violation; the amount of the penalty assessed; the loss of government revenue; the mitigated amount (if applicable); the amount of money paid; the alleged violator's right to seek mitigation; judicial review or appeal from a penalty assessed; and other information available under FOIA or other laws may be disclosed to the public after consulting the operational office involved and in accordance with existing CBP protocol regarding the release of information under FOIA by the appropriate OPA personnel or field manager.

6.4.4 Public disclosure of any other item of information concerning such cases, whether open or closed, shall only be made in conformance with the procedures provided in the Freedom of Information Act and other laws, as appropriate.

6.5 WHISTLEBLOWER ACT

6.5.1 CBP officials designated as spokespersons may comment on allegations made by declared whistleblowers. However, the quantity and type of information for potential release will be determined on a case-by-case basis by OPA personnel. This policy requires employees not to disclose information protected by the Privacy Act in personnel or investigative files.

6.6 RIDE-ALONG REQUESTS

6.6.1 All requests by the media to ride along in CBP aircraft and vessels must be approved in advance by the operational office HQ leadership.

6.6.1.1 Media ride-alongs on CBP conveyances are prohibited during the execution of arrest and search warrants. All other ride-along requests shall be handled on a case-by-case basis. Media related requests shall be coordinated in advance with the appropriate Public Affairs personnel. All ride-along requests shall include a signed "hold harmless" agreement. Approval of ride-along requests on CBP aircraft is contingent on applicable federal regulations regarding non-essential passengers on government law enforcement aircraft.



## 6.8 ACCIDENTS AND INCIDENTS

6.8.1 Principal field officers and/or public affairs specialists shall ensure the timely coordination and release of accurate information released to the media as soon as possible after an accident involving CBP aircraft or vessels; or after serious vehicle accidents involving CBP personnel. This is to prevent or dispel rumors that could promote misinformation in media reports.

6.8.2 The names of all injured or deceased accident victims will be withheld pending

notification of next of kin. Depending on the nature of the incident, and unless there are exigent circumstances to the contrary, following notification of next of kin, names of CBP employees may be released along with job title and duty station. Such release will be coordinated with impacted operational offices.

6.8.3 If news media arrive at the scene of an accident, the officer in charge or OPA personnel shall be the only official(s) authorized to release official information. The integrity of the incident site must be preserved and any exposed classified or law enforcement sensitive material immediately will be removed prior to permitting news media photography.



6.9 INTERNATIONAL OPERATIONS

6.9.1 The Office of International Affairs (INA) and other CBP offices with employees abroad or conducting international training programs abroad may, at their discretion and with the concurrence of appropriate U.S. embassy personnel, provide information about such programs and training to the media. When such events occur, CBP personnel abroad will inform the OPA prior to the disclosure of information, when possible. In the event that notification to the OPA cannot be made in advance, the Office of International Affairs will notify the OPA as soon as possible of any such media event.

6.9.2 The Office of International Affairs, will ensure timely coordination of major international events. News releases by OPA will be coordinated with the State Department, foreign country administrations, and the Office of International Affairs.

7. MEASUREMENT

7.1 The OPA will accurately and efficiently provide information regarding CBP policies and activities to the public through interaction with accredited media, production of brochures, pamphlets, and other internal and external publications, and operation and review of interactions with the public and other stakeholders. Effective communication begins with effective planning and continues throughout the project. Some of the following methods will be used to track effectiveness of communications: web tracking; user surveys and questionnaires; telephone surveys; user observation; focus group feedback; and feedback cards.

8. NO PRIVATE RIGHTS CREATED

8.1 The procedures set forth in this directive are for CBP internal use only and create no private rights, benefits, or privileges for any private person or party.

Acting Commissioner
U.S. Customs and Border Protection