1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

RAY ASKINS, et al.,

                              Plaintiffs,

        vs.

U.S. DEPARTMENT OF
HOMELAND SECURITY, et al.,

                              Defendants.

CASE NO. 12-CV-2600 W (BLM)

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION [DOC. 19]**

Pending before the Court is Plaintiff Ray Askins' and Plaintiff Christian Ramirez's (collectively, "Plaintiffs") motion for a preliminary injunction. Defendants United States Department of Homeland Security, David V. Aguilar, Billy Whitford, and Frank Jaramillo ("Defendants") oppose the motion. Having reviewed and considered the parties' arguments as set forth in their papers, for the reasons outlined below, the Court **DENIES** the motion for a preliminary injunction [Doc. 19].

## I.    BACKGROUND

Plaintiffs allege that in two separate but similar incidents, their First Amendment rights were infringed. The first incident involved Mr. Ramirez and occurred on June 20, 2010 at the San Ysidro Port of Entry. The second involved Mr. Askins and occurred on April 19, 2013 at the Calexico Port of Entry. Plaintiffs filed the instant

12cv2600

motion for preliminary injunction to "prevent further violations of Plaintiffs' First Amendment right to photograph matters exposed to public view, including the conduct of law enforcement officers in the course of their duties." (*Pls.' Mot. Prelim. Inj.* [Doc 19-1], p. 9.)

A.    <u>Incident Involving Mr. Ramirez</u>

Mr. Ramirez is a U.S. citizen living in San Diego, California who crosses the border three or four times a month, often to visit his family in Mexico. (*Declaration of Christian Ramirez* [Doc. 19-3], ¶¶ 2, 3.) He works as the Human Rights Director for Alliance San Diego, a nonprofit organization dedicated to a number of causes, including issues related to immigrant rights at the U.S.-Mexico Border. (*Id.*, ¶ 4.) As part of his job, and as a concerned member of the "border community," Ramirez often visits the U.S.-Mexico border "to observe law enforcement activity and monitor human rights issues." (*Id.*, ¶ 5.)

On or around June 20, 2010, Mr. Ramirez and his wife were returning to the United States from visiting a family member in Mexico. (*Id.*, ¶¶ 6-7.) After being admitted into the United States, Mr. Ramirez and his wife crossed a pedestrian bridge that passes over Interstate 5 on the U.S. side of the border. (*Id.,* ¶ 7.) While crossing the bridge, Mr. Ramirez noticed that male CBP officers were inspecting and patting down female pedestrians at a southbound pedestrian checkpoint below the bridge. (*Id.,* ¶ 8.) Mr. Ramirez claims that his wife said that the officers were only inspecting female pedestrians. (*Id.*) Mr. Ramirez stopped for more than ten minutes to observe the checkpoint, taking several pictures with his cell phone camera "out of concern that the officers were acting inappropriately." (*Opp'n*, pp. 5–6 (citing *Decl. Ramirez*, ¶ 9).) Defendants claim that Mr. Ramirez admits to having taken these photos while on CBP port of entry property. (*Opp'n.*, pp. 9-10.) Mr. Ramirez denies this claim. (*Reply* [Doc. 30] 5.) It is undisputed that Mr. Ramirez did not attempt to obtain permission from

CBP prior to photographing the port of entry.  (*See Declartion of Billy Whitford* [Doc 27-1],¶¶ 38-42; *See generally Pls.' Mot. Prelim. Inj.; See generally Reply.*)

While Mr. Ramirez was observing and photographing the checkpoint, a uniformed officer asked him to present his personal identification documents and to stop taking pictures.  (*Decl. Ramirez*, ¶¶ 11, 12.) After explaining that he had already passed through inspection, refusing to hand over his documents, and taking another picture of the officer, Mr. Ramirez and his wife began to descend the pedestrian bridge. (*Id.,* ¶¶ 12, 13.)  Mr. Ramirez alleges that he was subsequently detained, questioned, and searched.  (*Id.,* ¶¶ 14-21.)  Mr. Ramirez claims that a CBP officer took his phone and deleted all of his photos of the checkpoint. (*Id.* ¶ 22.)  CBP has not located records of any incident involving Mr. Ramirez on or around June 20, 2010.  (*Opp'n.* 11.)

### B.   Incident Involving Mr. Askins

Mr. Askins is a U.S. citizen living primarily in Mexicali, Mexico who frequently crosses the border into the United States.  (*Declaration of Ray Askins* [Doc. 19-2], ¶¶ 2, 3.)  He maintains and contributes to a blog that addresses environmental issues and human rights abuses in the U.S.-Mexico border region.  (*Id.,* ¶ 3.)  Mr. Askins' work "involves extensive research, investigation, and analysis of CBP activities."  (*Id.,* ¶4.) On April 18, 2012, Plaintiff Ray Askins emailed Calexico Port Director Billy Whitford and Calexico Public Affairs and Supervisory CBP Officer John Campos, requesting permission to photograph the interior of the vehicle secondary inspection area of the Calexico Port of Entry.  (*Decl. Whitford,* ¶ 12; *Decl. Whitford,* Ex. C.)  His email, sent at approximately 4:30 p.m., indicated he would be passing through the Calexico port around noon on April 19, 2013.  (*Decl. Whitford,* Ex. C.)  Mr. Askins alleges that  he also called Officer Campos on April 18, 2012 with the same request.  (*Decl. Whitford*, ¶ 8.)  According to Mr. Askins, Officer Campos said that it would be inconvenient for him to take the requested photos, but he did not explicitly object to the request.  (*Decl. Whitford*, ¶ 8.)

12cv2600

1    The next morning, on April 19, 2013, having received no response from Mr.
2    Whitford, Mr. Askins called Officer Campos to follow up on his request.  (*Decl.*
3    *Whitford*, ¶ 13.)  Defendants contend that Officer Campos explained to Mr. Askins that
4    he did not have permission to photograph the secondary vehicle inspection area at that
5    time, but was free to photograph the port of entry when not on port of entry property.
6    (*Id.*)  Mr. Askins claims that his call was not answered, and he left a voicemail
7    indicating that instead of taking photographs inside the secondary inspection area, he
8    would stand on the street in Calexico and photograph the secondary inspection from
9    there.  (*Decl. Askins,* ¶ 10.)

10   Later that day, Mr. Askins drove to Calexico and photographed the exit of
11   secondary inspection area.  (*Decl. Askins,* ¶ 10.)  Mr. Askins contends that he took the
12   photos from a public street outside the port of entry.  (*Id.* ¶ 11.)  Defendants contend
13   that the location where Mr. Askins took the photos was on port of entry property.
14   (*Decl. Whitford*, ¶ 14.)  Shortly thereafter, Mr. Askins was detained and searched by
15   CBP officers who had observed him taking photographs.  (*Decl. Whitford* [Doc. 27-1]
16   ¶¶ 14, 16, 17, 18.)  Mr. Askins alleges that the CBP officers deleted the photos he had
17   taken after Mr. Askins refused the CBP officers' request to delete the photos.  (*Decl.*
18   *Askins,* ¶¶12-13, 20.)    CBP denies deleting Askins's photographs.  (*Opp'n.*, p. 10;
19   *Whitford Decl.,* ¶¶19, 21.)

20   On October 24, 2012, Plaintiffs filed their complaint against Defendant, claiming
21   violations of the First and Fourth Amendments.  (*Compl.* [Doc. 1].)  On January 29,
22   2013, Plaintiffs filed a motion for preliminary injunction based on Defendants' alleged
23   violations of the First Amendment.  (*Pls.' Mot. Prelim. Inj.* [Doc. 19]; *see also Reply*
24   [Doc. 30].)  Defendants oppose.  (*Opp'n* [Doc. 27].)

25

26   **II.    LEGAL STANDARD**

27   Under Rule 65 of the Federal Rules of Civil Procedure, a district court has the
28   authority to issue a preliminary injunction in the exercise of its equitable powers.  Fed.

R. Civ. P. 65.  "The standard for granting a preliminary injunction balances the plaintiff's likelihood of success against the relative hardship to the parties." Clear Channel Outdoor, Inc. v. City of L.A., 340 F.3d 810, 813 (9th Cir. 2003); Stormans, Inc. v. Selecky, 586 F.3d 1109, 1139 (9th Cir. 2008).  A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion. Mazurek v. Armstrong, 520 U.S. 968, 972 (1997).  The Ninth Circuit recognizes two tests for granting preliminary injunctive relief. Save Our Sonoran, Inc. v. Flowers, 408 F.3d 1113, 1120 (9th Cir. 2005).

To obtain a preliminary injunction under the first, "traditional," test, a plaintiff must show "'(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases).'" Save Our Sonoran, 408 F.3d at 1120 (quoting Johnson v. Cal. State Bd. of Accountancy, 72 F.3d 1427, 1430 (9th Cir. 1995)).

To obtain a preliminary injunction under the second, "alternative," test, a plaintiff must demonstrate either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in his favor. Save Our Sonoran, 408 F.3d at 1120 (citing Johnson, 72 F.3d 1430); Immigrant Assistance Project of the L.A. Cnty. of Fed'n of Labor v. INS, 306 F.3d 842, 873 (9th Cir. 2002).  "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases.  They are not separate tests but rather outer reaches of a single continuum." Baby Tam & Co. v. City of Las Vegas, 154 F.3d 1097, 1100 (9th Cir. 1998).  Thus, "the greater the relative hardship to the moving party, the less probability of success must be shown." Immigrant Assistance Project, 306 F.3d at 873 (citations).  "Conversely, it has been held that a preliminary injunction may be

granted even though the harm factor favors defendant if plaintiff demonstrates a substantial likelihood that he will ultimately prevail." Id. (citations).

"In cases where the public interest is involved, the district court must also examine whether the public interest favors the plaintiff." Fund for Animals, Inc. v. Lujan, 962 F.2d 1391, 1400 (9th Cir. 1992); see also Caribbean Marine Servs. Co., Inc. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988) ("Under either test, however, the district court must consider the public interest as a factor in balancing the hardships when the public interest may be affected.").

## III.   DISCUSSION

As an initial matter, there is some dispute as to the scope of Plaintiffs' requested preliminary injunction. Plaintiffs claim that "[c]ontrary to Defendants' assertion, Plaintiffs do not seek an injunction preventing Defendants from regulating photography anywhere 'on land ports of entry.'" (*Reply,* p. 1 (citing *Opp'n.,* p. 1)). "Instead, Plaintiffs seek only to protect their own well-established 'First Amendment right to photograph matters exposed to public view'–including the exterior of CBP buildings and officers carrying out their duties in public." (*Reply,* p. 1 (citing *Pls.' Mot. Prelim Inj.*) The Court agrees.

Defendants argue that the Plaintiffs were in a nonpublic forum when they took the pictures in question, and therefore, we subject to CBP's reasonable and viewpoint neutral restrictions of unauthorized photography. (*Opp'n.* 15.) Thus, Defendants characterize this motion as one that turns completely on whether or not Plaintiffs were photographing the border from a public or private forum. (*Opp'n,* pp. 14-18.) That is not the case. Instead, resolution of this motion depends on whether Plaintiffs can carry their burden of establishing that they are likely to show that the Defendants violated their alleged well-established First Amendment right to photograph matters exposed to public view.

As mentioned above, a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion. Mazurek, 520 U.S. at 972. For the following reasons, the Court finds that Plaintiffs have not met their burden, and as such, they are not entitled to a preliminary injunction.

### A.   Probability of Success

Plaintiffs claim that they are likely to show that Defendants have violated the First Amendment in two ways. Specifically, Plaintiffs claim that Defendants violated Plaintiffs' constitutional rights to (1) photograph CBP officers engaged in the discharge of their duties and (2) photograph the exterior of federal buildings such as U.S. ports of entry. (Pls.' Mot. Prelim. Inj., pp. 10-18.) For the following reasons, the Court finds that Plaintiffs are unlikely to succeed on the merits of these claims.

### 1.   Plaintiffs Fail to Establish a First Amendment Right to Photograph CBP Officers Executing Their Duties at the Border

There is no doubt that citizens enjoy a First Amendment right to photograph police officers performing their responsibilities in public places, as evidenced by the cases cited by Plaintiffs. Fordyce v. City of Seattle, 55 F.3d 436, 439 (9th Cir 1995); Glik v. Cunniffe, 655 F.3d 78, 82 (1st Cir. 2011) (holding that there is a constitutionally protected right to videotape police carrying out their duties in public); Smith v. City of Cumming, 212 F.3d 1332, 1333 (11th Cir. 2000) ("The First Amendment protects the right to gather information about what public officials do on public property," including right "to photograph or videotape police conduct"); Robinson v. Fetterman, 378 F.Supp. 2d 534, 542 (E.D. Pa. 2005) (finding First Amendment right to videotape state troopers on public highway performing truck inspections). The Department of Justice letter that Plaintiffs cite is in accord with this line of cases, and is also limited to

-7-                                    12cv2600

1  situations where police officers are performing their duties in a public place.  (*See DOJ*
2  *Letter* [Doc. 19-6] 1.)

3      Noticeably lacking from the Plaintiffs' motion, however, is any argument as to
4  why these cases apply to CBP officers executing their duties at U.S. ports of entry.
5  Plaintiffs have not cited, and the Court is not aware of, controlling authority suggesting
6  that Plaintiffs have a First Amendment right to photograph CBP officers as they
7  perform their operational duties at U.S. ports of entry.  (*See Mot. Prelim. Inj.*, pp. 11-14.)
8  Instead, Plaintiffs conclude that "[g]iven the government's unequivocal statements in
9  *Sharp* . . . Defendants cannot deny that the First Amendment protects the right to
10 record CBP officers engaged in the discharge of their duties."  Thus, Plaintiffs assume
11 that CBP officers are legally equivalent to police officers and that their duties are legally
12 equivalent to those of police officers.  Moreover, Plaintiffs assume that the public places
13 at issue in the cases cited above are legally equivalent to U.S. ports of entry.  The Court
14 is unwilling to make such assumptions, especially in light of the sensitive nature of CBP
15 operations and its responsibility for national security and secure borders.  (*See Decl.*
16 *Whitford*, ¶¶ 8, 9.)

17     In light of the forgoing, the Court finds that Plaintiffs have failed to show that
18 citizens have a First Amendment right to photograph CBP officers executing their
19 duties at U.S. ports of entry.  Therefore, Defendants have not shown that they are likely
20 to succeed on the merits of this line of argument.

21

22      **2.    Plaintiffs Fail to Establish a First Amendment Right to**
23             **Photograph the Secondary Inspection Area at the Border**

24     Plaintiffs next argue that "the right to photograph matters exposed to public view
25 includes the public's right to photograph the exterior of federal buildings and facilities."
26 (*Mot. Prelim. Inj.* 14.)  Thus, Plaintiffs contend, Mr. Askins' photos of the secondary
27 inspection area are protected under the right to photograph matters exposed to public
28 view.  (*Id.*)  This argument is unpersuasive because Mr. Askins was photographing the
inside of the secondary inspection area.

When Mr. Askins was confronted, he was photographing the interior of the secondary vehicle inspection area at the port of entry.  (*Compl.*, ¶ 22; *Decl. Askins*, ¶ 10.)  The secondary vehicle inspection area is "among the most sensitive areas on a port of entry."  (*Decl. Whitford*, ¶ 15.)  In the secondary vehicle inspection area, "CBP officers conduct border searches and assist with investigations of vehicles using sensitive search techniques and technologies."  (*Id.*)  "Visual documentation of these techniques and technologies could assist drug traffickers and human smugglers in alluding detection."  (*Id.*)  Plaintiffs' argument relies heavily on the presumption that Mr. Askins was taking exterior photos.  Indeed, Plaintiffs present no argument that a First Amendment right to photograph the interior of federally owned facilities exists.  Even the FPS bulletin that Plaintiffs' rely upon in their brief explicitly states that it does not apply to photography of the *interior* of federal buildings.  (*FPS Info. Bulletin* [Doc. 19-7] 2 (emphasis in original).)

Plaintiffs also attempt to establish a "right to photograph the exterior of federal buildings" by suggesting that "architectural photography" has "inherent First Amendment value."  (*Mot. Prelim. Inj.* 14.)  Even if the <u>Bery</u> or <u>Leicester</u> cases establish that the First Amendment protects "architectural photography," such a rule is unhelpful to Plaintiffs as they fail to argue how either case stands for the proposition that Mr. Askins has a right to photograph the interior of the secondary vehicle inspection area.  <u>See</u> <u>Bery v. City of New York</u>, 97 F.3d 689 (2nd Cir. 1996); <u>Leicester v. Warner Bros.</u>, 232 F.3d 1212, 1217 (9th Cir. 2000).

Plaintiffs next argue that because these photos "served the purpose of discussing and critiquing the environmental impact of exhaust emission from vehicles delayed at the port of entry," they are protected political speech under the First Amendment.  (*Pls.' Mot. Prelim. Inj.*, pp. 14-15.)  However, none of the cases cited by Plaintiffs address whether photographing the interior of sensitive government buildings is protected political speech.  <u>Arizona Free Enterprise Club's Freedom Club PAC v. Bennett</u>, 131 S. Ct. 2806 (2011) (finding Arizona's matching funds scheme substantially burdens political speech and is not sufficiently justified by a compelling interest to survive First

12cv2600

1  Amendment scrutiny); Butterworth v. Smith, 494 U.S. 624, 632 (1990) (finding Florida

2  statute prohibiting witness from ever disclosing testimony given before grand jury

3  violates First Amendment insofar as it prohibits witness from disclosing own testimony

4  after grand jury's term has ended); NAACP v. Clairborne Hardware Co., 458 U.S. 886,

5  913 (1982) (finding, *inter alia*, that a boycott which was not violent was constitutionally

6  protected).

7       Moreover, the Court is unimpressed by Plaintiffs' attempt to categorize Mr.

8  Askins' photographs as political speech.  It is no secret that vehicles are delayed at land

9  ports of entry for hours at a time.  Such delays may indeed negatively impact the

10 environment.  However, Mr. Askins' photographs do not document vehicle delays but

11 instead amount to surveillance of CBP officers, techniques, and technologies.  (*Supra*,

12 10.)  Thus, Plaintiffs cannot show that photographing the operational activities of CBP

13 officers inside the secondary inspection area constitutes political speech.

14      In light of the forgoing, the Court finds that Plaintiffs have failed to show that

15 citizens have a First Amendment right to photograph the interior portion of the

16 secondary inspection area at U.S. ports of entry.  Therefore, Defendants have not

17 shown that they are likely to succeed on the merits of this line of argument.  Thus, the

18 likelihood of success factor weighs heavily against granting an injunction.

19

20      **B.    Irreparable Harm**

21      The second factor the Court considers is irreparable harm.  Plaintiffs argue that

22 because they "likely will prevail on the merits of their First Amendment claims" they

23 will necessarily suffer irreparable harm.  (*Pls.' Mot. Prelim. Inj.*, p. 21.)

24      "The loss of First Amendment freedoms, for even minimal periods of time,

25 unquestionably constitutes irreparable injury."  Elrod v. Burns, 427 U.S. 347, 373

26 (1976).  However, a plaintiff who is less likely to succeed must produce a greater

27 showing of irreparable harm.  Preminger v. Principi, 422 F.3d 815, 826 (9th Cir. 2005).

28      As previously stated, Plaintiffs have not established a likelihood of success that

CBP's photography rules violate their First Amendment rights. See Hale v. Dep't of

-10-                                    12cv2600

1  Energy, 806 F.2d 910, 918 (9th Cir. 1986) (holding "[a]bsent a First Amendment claim,

2  the appellants have failed to establish that irreparable harm will flow from a failure to

3  preliminarily enjoin defendants' actions.").    Furthermore, Plaintiff Ramirez waited over

4  two years from the time of the alleged incident to file this lawsuit.  (*See Pls.' Mot. Prelim.*

5  *Inj.*, p. 5.)  Similarly, over six months passed between Askins' incident and this lawsuit.

6  (*See id.*, p. 2.)   The passage of time implies a lack of necessity and weighs against

7  Plaintiff's claim of irreparable harm.   See Miller for & on Behalf of N.L.R.B. v.

8  California Pac. Med. Ctr., 991 F.2d 536, 544 (9th Cir. 1993) ("Plaintiff's long delay

9  before seeking a preliminary injunction implies a lack of urgency and irreparable

10  harm.").

11        For these reasons, the Court finds that Plaintiffs have not met their heightened

12  burden to show irreparable harm.  See Preminger, 422 F.3d at 826.  Thus, this factor

13  weighs heavily against granting an injunction.

14

15        **C.    Balance of Equities & Public Interest**

16        The third and fourth factors the Court considers are the balance of the equities

17  and public interest.   Plaintiffs argue that they meet both elements, noting that the

18  analysis of these two elements often merge when the government is the opposing party.

19  (*Pls.' Mot. Prelim. Inj.*, p. 21 (citing Nken v. Holder, 556 US 418, 435 (2009).)

20        When considering the necessity of a preliminary injunction, "the public interest

21  inquiry primarily addresses the impact on non-parties rather than parties."  Preminger,

22  422 F.3d at 826 (quoting Sammartano, 303 F.3d at 974 (9th Cir. 2002).  "Generally,

23  public interest concerns are implicated when a constitutional right has been violated,

24  because all citizens have a stake in upholding the Constitution."  Id.  The Court will not

25  grant a preliminary injunction based on one set of public interests "unless those public

26  interests outweigh other public interests that cut in favor of *not* issuing the injunction."

27  Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1138 (9th Cir. 2011).

28        Plaintiffs first contend that the public interest favors an injunction because "'it

is always in the public interest to prevent the violation of a party's constitutional

1  rights.'" (*Pls.' Mot. Prelim. Inj.*, p. 21.)  Further, Plaintiffs argue that "the public has a

2  specific interest in preserving the right to document CBP activities." (*Id.*)  However,

3  Plaintiffs have not shown that they are likely to establish a constitutional violation or

4  that citizens enjoy broad First Amendment protection to document all CBP "activities."

5  (*Id.*)

6          In addition, Defendants persuasively argue that the rule restricting photography

7  serves important national and border security interests.  (*Opp'n*, p. 30; *Decl. Whitford*,

8  ¶¶ 8-10.)  Of particular import is the fact that granting an injunction would

9  compromise border security.  (*Decl. Whitford*, ¶ 9.)

10          In light of the foregoing, Plaintiffs' have not established that their First

11  Amendment concerns outweigh the public interests connected to border security.

12  Accordingly, this factor weighs against granting an injunction.

13

14  **IV.    CONCLUSION AND ORDER**

15          For the reasons discussed above, the Court DENIES Plaintiffs' motion for a

16  preliminary injunction [Doc. 19].

17

18          **IT IS SO ORDERED.**

19

20  **DATED:  April 12, 2013**

21

22

23                                                    _____

24                                                    Hon. Thomas J. Whelan
                                                      **United States District Judge**

25

26

27

28

-12-

12cv2600