UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAY ASKINS and CHRISTIAN RAMIREZ,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, et al.,<br><br>Defendants. | CASE NO. 12-CV-2600 W (BLM)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [DOC. 22] WITH LEAVE TO AMEND** |

Defendants U.S. Department of Homeland Security, David V. Aguilar, Billy Whitford, and Frank Jaramillo move to dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(6). (*MTD* [Doc. 22]; *Reply* [Doc. 33].) Plaintiffs oppose. (*Opp'n* [Doc. 32].) The Court decides the matter on the parties' briefs and the record. See S.D. Cal. Civ. L.R. 7.1(d.1). For the reasons discussed below, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' 12(b)(6) motion.

## I.  BACKGROUND

Plaintiffs allege that in two separate but similar incidents, their First Amendment and Fourth Amendment rights were infringed. The first incident involved Mr. Ramirez and occurred on June 20, 2010 at the San Ysidro Port of Entry. The second involved Mr. Askins and occurred on April 19, 2012 at the Calexico Port of Entry.

### A.  Incident Involving Mr. Ramirez

According to the Complaint, Mr. Ramirez is a U.S. citizen living in San Diego, California who crosses the border three or four times a month, often to visit his family in Mexico. (*Compl.* ¶ 33.) He works as the Human Rights Director for Alliance San Diego, a nonprofit organization dedicated to a number of causes, including issues related to immigrant rights at the U.S.-Mexico Border. (*Id.* ¶ 34.) As part of his job, and as a concerned member of the "border community," Ramirez often visits the U.S.-Mexico border "to observe law enforcement activity and monitor human rights issues." (*Id.* ¶ 35.)

On or around June 20, 2010, Mr. Ramirez and his wife were returning to the United States after visiting a family member in Mexico. (*Compl.* ¶¶ 36-37.) After being admitted into the United States, Mr. Ramirez and his wife crossed a pedestrian bridge that passes over Interstate 5 on the U.S. side of the border. (*Id.* ¶ 37.) While crossing the bridge, Mr. Ramirez noticed that male Customs and Border Protection ("CBP") officers were inspecting and patting down female pedestrians at a southbound pedestrian checkpoint below the bridge. (*Id.* ¶ 38.) Mr. Ramirez claims that his wife said that the officers were only inspecting female pedestrians. (*Id.*) Mr. Ramirez "observed the checkpoint for approximately ten to [fifteen] minutes," taking approximately ten pictures using his cell phone camera "out of concern that the officers were acting inappropriately." (*Id.* ¶ 39.) Mr. Ramirez does not allege that he had or attempted to obtain permission from CBP prior to photographing the port of entry. (*See generally Id.*)

While Mr. Ramirez was observing and photographing the checkpoint from the pedestrian bridge, a uniformed officer asked him to present his personal identification documents and to stop taking pictures. (*Compl.* ¶¶ 42-43.) After explaining that he had already passed through inspection, refusing to hand over his documents, and taking another picture of the officer, Mr. Ramirez and his wife began to descend the pedestrian bridge. (*Id.* ¶¶ 42-44.)

At the bottom of the bridge, CBP officers stopped Mr. Ramirez and his wife and asked whether and why he had taken photographs. (*Compl.* ¶ 44.) Mr. Ramirez told the officers that he had taken photographs of "what he believed to be inappropriate activity by CBP officers at the checkpoint–namely, the patting down of women by male officers." (*Id.*) After Mr. Ramirez refused the officer's request to turn over his phone, he offered to show them the pictures. (*Id.* ¶ 45.)

Then, a U.S Immigration and Customs Enforcement ("ICE") agent confronted Mr. Ramirez and asked him for his personal identification documents. (*Compl.* ¶ 46.) Mr. Ramirez again refused, and explained that he and his wife had already been inspected. (*Id.*) The ICE agent took Mr. Ramirez's and Mr. Ramirez's wife's passports and brought them to a nearby office. (*Id.*) While in the office, a CBP officer scrolled through the photos on Mr. Ramirez's phone and deleted all the photos Mr. Ramirez had taken of the CBP checkpoint. (*Id.*) The ICE agent returned the passports and allowed them to continue on their way. (*Id.* ¶ 49.)

### B.     Incident Involving Mr. Askins

According to the Complaint, Mr. Askins is a U.S. citizen living primarily in Mexicali, Mexico who frequently crosses the border into the United States. (*Compl.* ¶ 17.) He maintains and contributes to a blog that addresses environmental issues and human rights abuses in the U.S.-Mexico border region. (*Id.*) Mr. Askins' work "involves extensive research, investigation, and analysis of CBP activities." (*Id.*)

On April 18, 2012, Askins contacted CBP Officer John Campos by phone and

1  "requested permission to take three or four photographs inside the secondary inspection
2  area at the Calexico port of entry" on April 19, 2012. (*Compl.* ¶ 20.) Officer Campos
3  did not object to the request, nor did he grant it. (*Id.*) On April 19, 2012, Mr. Askins
4  called Officer Campos to follow up on their previous conversation, but Campos did not
5  answer. (*Id.* ¶ 21.) Mr. Askins left Officer Campos a voicemail stating that he was
6  going to stand on the street in Calexico and take photographs of the exit of the
7  secondary inspection area. (*Id.*)

8  On or about April 19, 2012, Mr. Askins took "three or four photographs of the
9  exit of the secondary inspection area" while standing approximately "50-100 feet from
10 the exit from the secondary inspection area." (*Compl.* ¶ 22.) When he took these
11 pictures, he was in the United States and "not engaged in the act of crossing the
12 border." (*Id.* ¶ 24.) After Mr. Askins took the pictures, CBP officers demanded Mr.
13 Askins delete the photos. (*Id.* ¶ 25.) Mr. Askins refused, and the officers stated they
14 would "smash the camera if Mr. Askins did not delete the photos." (*Id.*) He again
15 declined, explaining that the photos were his property. (*Id.*) At that point, the officers
16 handcuffed Mr. Askins and took his camera, passport, car keys, and hat. (*Id.*)

17 Mr. Askins was forcefully lead into a small room inside the secondary inspection
18 area and told to sit down. (*Compl.* ¶ 27.) He was not free to leave. (*Id.*) He was next
19 lead to a separate room where he was "subjected . . . to an invasive and embarrassing
20 physical search." (*Id.* ¶ 28.) After the search, the officers told Mr. Askins he was free
21 to go and returned his belongings. (*Id.* ¶ 29.) Upon inspection of his phone, he realized
22 that three of the four pictures he had taken of the port of entry had been deleted. (*Id.* ¶
23 30.)

24

25 **C.    The Current Litigation**
26 On October 24, 2012, Plaintiffs filed this action alleging multiple violations of the
27 First and Fourth Amendments. (*Compl.* ¶¶ 52-73.) Plaintiffs' First Amendment claims
28 include a number of theories of liability:

> 1. Defendants violated Plaintiffs' right to take photographs and video recordings of U.S. ports of entry.
> 2. Defendants violated Plaintiffs' right to take photographs and video recordings of federal law enforcement officers engaged in the public discharge of their duties.
> 3. CBP's photography policy violates the rights described in (1) and (2).
> 4. CBP has a practice of violating the rights described in (1) and (2).

(*Compl.* 11-13.) Plaintiffs' Fourth Amendment claims also include a number of theories of liability:

> 1. Defendants violated Plaintiffs' right to freedom from unreasonable search and seizure of one's person.
> 2. Defendants violated Plaintiffs' right to freedom from unreasonable search and seizure of one's property.
> 3. CBP has a policy that violates the rights described in (1) and (2).
> 4. CBP has a practice of violating the rights described in (1) and (2).
> 5. Defendants violated Mr. Askins' right to freedom from the use of excessive force.

(*Compl.* 13-15.)

On January 29, 2013, Plaintiffs filed a motion for preliminary injunction based on Defendants' alleged violations of the First Amendment. (*Pls.' Mot. Prelim. Inj.* [Doc. 19].) On April 12, 2013, the Court issued an order denying the motion for preliminary injunction. (*Order Denying Prelim. Inj.* [Doc. 35].) On February 13, 2013, Defendants filed the instant motion to dismiss. (*MTD* [Doc. 22]; *Reply* [Doc. 33].). Plaintiffs oppose. (*Opp'n* [Doc. 32].)

II.   **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In ruling on a 12(b)(6) motion, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." Vasquez v. L.A. Cnty., 487 F.3d 1246, 1249 (9th Cir. 2007). However, the complaint must also "contain sufficient factual matter…to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009)

(quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 554, 570 (2007)). A complaint will survive a motion to dismiss where the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556).

## III.  DISCUSSION

### A. Violation of the First Amendment

In <u>Cornelius v. NAACP Legal Defense and Educational Fund</u>, 473 U.S. 788, 800 (1985), the Supreme Court explained that it "has adopted a forum analysis as a means of determining when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes." The level of scrutiny applied to the government's limitation depends on whether the speech occurs in a public or private forum. <u>Id.</u>

Restrictions on speech in a public forum must be "justified without reference to the content of the regulated speech ... narrowly tailored to serve a significant governmental interest, and ... leave open ample alternative channels for communication of the information." <u>American Civil Liberties Union of Nevada v. City of Las Vegas</u>, 333 F.3d 1092, 1106 (9th Cir. 2003) (quoting <u>Ward v. Rock Against Racism</u>, 491 U.S. 781, 791 (1989)). Restrictions on speech in a nonpublic forum, on the other hand, are subject to a much less stringent test: they must only be "reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." <u>Perry Education Association v. Perry Local Educators' Association</u>, 460 U.S. 37, 46 (1983).

Defendants move to dismiss Plaintiffs' First Amendment claims, arguing that "CBP's prohibition of unauthorized photography on ports of entry complies with the First Amendment because it constitutes a reasonable and viewpoint neutral restriction of expressive activity on a nonpublic forum." (*MTD* 10.) Essentially, Defendants argue that Plaintiffs were in nonpublic fora when they took the pictures in question,

1  which subjects the Defendants photography policy to the lenient "reasonable/view
2  point neutral" standard.  Plaintiffs oppose, arguing that they were in public fora when
3  they took the pictures and that CBP's regulation of photography is "unreasonable and
4  not viewpoint-neutral."  (*Opp'n* 11.)  Thus, Plaintiffs contend that because they were
5  in public fora when taking the photos, the photography policy should be subject to
6  heightened scrutiny under the "significant government interest/narrowly tailored" test.

7    As an initial matter, the Court notes that Defendants' line of argument only
8  addresses the alleged unconstitutionality of CBP's written photography policy.[1]  It fails
9  to address Plaintiffs' other theories of liability under the First Amendment.  Thus, the
10 following analysis applies only to Plaintiffs' claims that the CBP's policy prohibiting
11 unauthorized photographs is unconstitutional.

13   1. **Plaintiffs have adequately plead that they were exercising their First Amendment rights in public fora.**

15   Public forums "are places, such as streets and parks, that have traditionally been
16 devoted to expressive activity." Preminger v. Principi, 422 F.3d 815, 823 (9th Cir.
17 2005).  "Sidewalks, streets, and parks generally 'are considered, without more, to be
18 public forums.'" American Civil Liberties Union, 333 F.3d at 1099 (quoting United
19 States v. Grace, 461 U.S. 171, 177 (1983)).  "Nonpublic fora" are "areas that have not
20 traditionally or explicitly been open to expressive activity." Preminger, 422 F.3d at
21 823.

22   Plaintiffs allege that Mr. Ramirez and his wife passed through primary inspection,
23 reentered the United States, and began walking across a "pedestrian bridge."  (*Compl.* ¶

---

[1] Defendants argue, in passing, that "even if the Court accepts Mr. Askins' allegation that he was off of port of entry as true for purposes of this motion, that allegation would not suffice to state a plausible claim . . . [because] [a] single instance of CBP officers stopping photography from just off of a port of entry would not constitute a practice of restricting photography outside of ports of entry." (*MTD* 11 n. 19.)  However, Defendants present no applicable legal authority to support this claim.

1  37.) While crossing the bridge, Mr. Ramirez began taking photographs of a pedestrian
2  checkpoint at the San Ysidro. (*Id.* ¶¶ 38-39.) That pedestrian bridge is essentially an
3  elevated sidewalk, which is generally considered to be a public forum with respect to
4  First Amendment jurisprudence.  See <u>American Civil Liberties Union</u>, 333 F.3d at
5  1099. Therefore, the Court finds that Plaintiffs have plausibly plead that Mr. Ramirez
6  was in a public forum when he took the photographs at issue here. <u>Id.</u>

7  Defendants argue that Mr. Ramirez was in a nonpublic forum because "Mr.
8  Ramirez admits that he was on the San Ysidro port of entry at the time he took the
9  photographs." (*MTD* 8.) However, Mr. Ramirez makes no such admission. Moreover,
10  even if Mr. Ramirez had made such an admission, his being located on government
11  owned property would not establish that he was in a nonpublic forum. See <u>Venetian
12  Casino Resort, L.L.C. v. Local Joint Executive Bd. Of Las Vegas</u>, 247 F.3d 937, 943
13  (9th Cir. 2001)(explaining that the title to property is not dispositive evidence in the
14  public forum versus nonpublic forum inquiry). Indeed, traditional public fora like
15  sidewalks and streets are often owned by the government. Finally, "the decision as to
16  whether a forum is public usually invokes a factual inquiry" which is inappropriate to
17  decide at this stage of the litigation. <u>Stewart v. Dist. of Columbia Armory Bd.</u>, 863
18  F.2d 1013, 1018 (D.C. Cir. 1988).

19  Here, the issue before the Court is whether it is plausible, based on the
20  allegations made in the complaint, that Mr. Ramirez could prove that the pedestrian
21  bridge in question is a public forum. In light of the foregoing, the Court answers this
22  question in the affirmative.

23  Plaintiffs claim that "Mr. Askins was standing on the shoulder of a public street
24  in Calexico, California, approximately 50-100 feet from the exit from the secondary
25  inspection area at the Calexico port of entry" when he took photos. (*Compl.* ¶ 22.)
26  These allegations are sufficient to establish that Mr. Askins was in a public forum for
27  purposes of a motion to dismiss, as public streets are generally considered to be public
28  fora.  See <u>American Civil Liberties Union of Nevada</u>, 333 F.3d at 1099.

Defendants proffer argument and evidence to establish that Mr. Askins was standing on "port of entry property." (*MTD* 7-8, n. 15.) However, as explained above, the ownership of this property does not establish conclusively that it is a nonpublic forum. Also, resolution of this factual dispute is inappropriate here. See Stewart, 863 F.2d at 1018. Therefore, Plaintiffs have sufficiently alleged that Mr. Askins was also in a public forum when he took the photographs in question.

### 2.   Content based

The first requirement for restriction on speech in a public forum to be constitutional is that it must be "justified without reference to the content of the regulated speech." American Civil Liberties, 333 F.3d at 1106. However, if a restriction is not content-neutral, the regulation is subjected to strict scrutiny and only valid if it is the least restrictive means available to further a compelling government interest. Berger v. City of Seattle, 569 F.3d 1029, 1052 (9th Cir. 2009).

CBP argues that its policy is content-neutral because it restricts any unauthorized photography on port property. (*See CBP Directive No. 5410-001B, Office of Public Affairs; Roles, Functions, Responsibilities*[2] [Doc. 22-2] Ex. A, ¶ 6.2.3.) However, as admitted by Defendants, "the decision to authorize photography shall be made '"without favoritism . . . while not compromising the DHS/CBP mission."'" (*MTD* 6 (citing *CBP Directive* 3.).) Such a rule is necessarily content-based because authorization depends on whether or not the

---

[2]Generally, the court may not consider material outside the complaint when ruling on a motion to dismiss. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, the court may consider any documents specifically identified in the complaint whose authenticity is not questioned by the parties. Fecht v. Price Co., 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (superceded by statute on other grounds). Moreover, the court may consider the full text of those documents, even when the complaint quotes only selected portions. Id.

1  CBP believes the content of the photography compromises the DHS/CBP
2  mission. Thus, CBP's photography policy is subject to strict scrutiny.

### 3.  Strict scrutiny

As a content-based regulation, the CBP requirement for authorized photography consistent with its "mission" is "only valid if it serves a compelling government interest in the least restrictive manner possible." Berger, 569 F.3d at 1052.

Defendants explain that their policy advances their "interests in preserving the integrity of its sensitive border search techniques, law enforcement operations, and criminal investigations." Defendants' asserted interest in regulating photography at the border serves perhaps the most compelling government interest: protecting the territorial integrity of the United States. U.S. v. Flores-Montano, 541 U.S. 149, 153 (2004) ("It is axiomatic that the United States, as sovereign, has the inherent authority to protect, and a paramount interest in protecting, its territorial integrity.") Plaintiffs do not, nor can they, plausibly dispute that this is not a compelling government interest.

Plaintiffs instead argue that the policy is not "the least restrictive means to further the articulated interest" because the CBP can serve these same interests by prohibiting photography of matters not exposed to public view. (*Plaintiffs' Supplemental Brief* 4.) Specifically, Plaintiffs suggest the policy is "overinclusive" as it extends to photography of matters exposed to public view, which do not implicate CBP interests. (*Id.*) However, Plaintiffs fail to account for the fact that a policy that prohibited photography of "matters exposed to public view" would not fully address the government's interest in protecting its borders. Specifically, many issues of border security "exposed to public view," such as the identity of CBP officers and search techniques, would be unprotected under such a rule. Moreover, a policy that restricted photography to "matters not exposed to public view" would be impractical, if not impossible to enforce, because border patrol agents could not determine who was and

who was not complying with such a rule.  Indeed, any photography policy that hinges on whether or not the subject of the photo is exposed to public view would still require CBP to authorize the photography.

Plaintiffs also maintain the policy is "underinclusive" as it fails to prevent photography of the same matters from outside port of entry property. (*Id.*) However, "[p]hotography from off of port entry property does not pose the same threat to government interests as photography" on port property. (*Reply* 8 n. 3.) This is because CBP can erect barriers and position its operations to shield sensitive techniques from off port property, but the same is not true for those on port of entry property.

Moreover, Plaintiffs apparent concern that Defendants have unbridled discretion to prohibit photography is unfounded.  Because CBP officials may not grant requests that compromise the Department of Homeland Security "mission," CBP's priority mission of securing the United States from terrorists and terrorist weapons and facilitating lawful international trade is a significant bar to unbridled discretion.  See 6 U.S.C. § 111.  Furthermore, CBP is precluded from using favoritism when deciding whether or not to grant requests. (*CBP Directive* 3.1.)   Therefore, CBP's legal directive provides sufficient safeguard against officer discretion.  Moreover, Plaintiffs have not alleged that either of them requested authorization and were subsequently denied the same due to improper officer discretion.

For the foregoing reasons, the Court finds that CBP's photography policy survives the strict scrutiny analysis due to the extremely compelling interest of border security and the fact that the Court finds the current policy to be the least restrictive alternative available to Defendants.  Therefore, Defendants motion to dismiss with respect to the constitutionality of the CBP photography policy is **GRANTED** with **LEAVE TO AMEND**.

### B.  Violation of the Fourth Amendment

### 1. Plaintiffs have not established that their photography policy is unconstitutional, so their argument based on the policy's presumed constitutionality fails.

Defendants move to dismiss Plaintiffs' Fourth Amendment claims by arguing that "because the restriction of unauthorized photography on land ports of entry is constitutional, the seizure and search of individuals who violate that restriction is also constitutional." (*MTD* 21.) Thus, Defendants base their entire argument on the premise that their photography policy is constitutional. However, as explained in detail above, the Plaintiffs have not shown that their policy is constitutional. Therefore, the Court **DENIES** the Defendants' motion to dismiss on this ground.

Defendants also claim Plaintiffs fail to allege "a pattern of officially sanctioned behavior" violative of the Fourth Amendment. (*MTD* 23, citing Melendres v. Aripaio, 695 F. 3d 990 (9th Cir. 2012).) They further argue Plaintiffs must show they are "realistically threatened by a repetition" of the violation, and have failed to do so. (*Id.*, quoting City of Los Angeles v. Lyons, 461 U.S. 95, 109 (1983).) In support of this argument, they contend that "a single instance" does not establish a pattern. (*MTD* 23.)

However, Plaintiffs specifically allege that "[i]n violating [Plaintiffs'] Fourth Amendment rights, the CBP officers acted pursuant to . . . a longstanding CBP practice." (*Compl.* ¶¶ 64, 73.) In support of these allegations, Plaintiffs have plead *two* instances of CBP officers improperly searching and seizing the persons and property of two separate individuals at two separate ports of entry while they took photos in a public forum. (*Compl.* ¶¶ 62-66, 71-73; *Opp'n* 11.) Moreover, the Complaint states both Plaintiffs hope to continue photographing ports of entry in the future. (*Compl.* 8, 11.) Accordingly, the Court finds that Plaintiffs have alleged a "pattern of official sanctioned behavior" that violates the Fourth Amendment.

Additionally, Defendants argue that CBP's written policy does not authorize deletion of detained individuals' photographs and that "[P]laintiffs' allegations of two

or three instances of deletion by CBP officers . . . do not plausibly state a claim that CBP officers engage in an officially sanctioned pattern of deleting photographs." (*MTD* 24.)  There is no dispute that CBP's photography policy does not condone deletion of photographs.  Moreover, a review of the CBP directive containing the photography policy reveals no such deletion rule. Therefore, the Court **GRANTS IN PART** Defendants' motion, to the extent that Plaintiffs claim that CBP's written photography policy allows deletion of Plaintiffs photographs. Because Plaintiffs cannot show that Defendants' written policy condones deletion of pictures, leave to amend would be futile, and this claim is thus **DISMISSED WITH PREJUDICE**.

However, the Court disagrees with Defendants' contention that Plaintiffs have not alleged a pattern of deleting photos.  Indeed, Plaintiffs have alleged that on two separate but similar occasions, officers took Plaintiffs phones and deleted pictures therefrom before returning the phones to their owners.  Thus, the Court finds it is plausible, based on the allegations made in the complaint, that Plaintiffs could prove that Defendants have a practice of deleting photos.  Thus, to the extent Defendants argue Plaintiffs have not plead a pattern or practice of deleting photos, Defendants' motion is **DENIED IN PART**.

### 2. Excessive Use of Force

Defendants have not moved to dismiss Plaintiffs' fourth claim, which alleges excessive use of force against Plaintiff Askins in violation of the Fourth Amendment. Therefore, this claim survives Defendants' motion to dismiss.

### IV.   CONCLUSION AND ORDER

For these reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss.  The Court **FURTHER ORDERS** as follows:

- Defendants' motion to dismiss with respect to Plaintiffs' First Amendment claims is **GRANTED WITH LEAVE TO AMEND**.  As

noted above, this dismissal applies only to Plaintiffs' claims that the Defendants' photography policy is unconstitutional under the First Amendment. To the extend Defendants move to dismiss Plaintiffs' First Amendment claims because they do not establish a pattern or practice the motion is **DENIED**. Defendants did not move to dismiss the remaining First Amendment claims.

- Defendants' motion to dismiss Plaintiffs' Fourth Amendment claims, to the extent that Plaintiffs claim that Defendants photography policy explicitly condones deletion of photographs, is **GRANTED**. Because Plaintiffs cannot show that Defendants' written policy condones deletion of pictures, leave to amend would be futile, and this claim is thus **DISMISSED WITH PREJUDICE**. Defendants motion to dismiss the remainder of Plaintiffs' Fourth Amendment claims is **DENIED**.

**IT IS SO ORDERED.**

DATED:  September 30, 2013

Hon. Thomas J. Whelan
United States District Judge