BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

JOHN R. TYLER
Assistant Director, Federal Programs Branch
United States Department of Justice, Civil Division

STEPHEN J. BUCKINGHAM (MD Bar)
NATHAN M. SWINTON (NY Bar)
Trial Attorneys, Federal Programs Branch
United States Department of Justice, Civil Division
20 Massachusetts Avenue, NW
Washington, DC 20530
Tel: 202-514-3330
Fax: 202-616-8470
Email: Stephen.Buckingham@usdoj.gov

Attorneys for Defendants

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

_____
                                          )
RAY ASKINS, et al.                        )
                                          ) No. 12-cv-2600 W-BLM
        Plaintiffs,                       )
                                          )
        v.                                )
                                          ) Date:      January 25, 2016
UNITED STATES DEPARTMENT OF               ) Time:      NO ORAL ARGUMENT
HOMELAND SECURITY, et al.                 )            PURSUANT TO LOCAL
                                          )            RULE
                                          ) Courtroom:       7
        Defendants.                       )
_____ )


## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT BY UNITED STATES DEPARTMENT OF HOMELAND SECURITY

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION.............................................................................................................. 1

BACKGROUND ............................................................................................................... 2

    A.    CBP policies restricting photography on land ports of entry................................ 2

    B.    Allegations in the Original Complaint ................................................. 5

    C.    This Court's prior rulings on Plaintiffs' claims ..................................... 6

    D.    Plaintiffs' First Amended Complaint................................................... 8

STANDARD OF REVIEW ................................................................................................ 10

ARGUMENT.................................................................................................................. 11

    A.    The Court should dismiss Claim One based on the Court's prior ruling upholding CBP's written photography policy as constitutional ........................ 12

    B.    The Court should dismiss the remaining claims because the Court's prior rulings make clear that CBP policy is constitutional ........................................... 14

    C.    Plaintiffs fail to assert an injury sufficient to establish standing ......................... 16

CONCLUSION ............................................................................................................... 17

# **TABLE OF AUTHORITIES**

## **Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .............................................................................10

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .............................................................................10

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983) ...............................................................................16

*Clapper v. Amnesty Int'l USA,*
    —— U.S. ——, 133 S. Ct. 1138 (2013) .............................................16

*Get Outdoors II, LLC v. City of San Diego,*
    506 F.3d 886 (9th Cir. 2007) ...............................................................16

*Goodrich & Pennington Mortg. Fund, Inc. v. Chase Home Fin., LLC,*
    No. 05cv636 (JLS), 2008 WL 698464 (S.D. Cal. March 14, 2008) .......................11

*Laird v. Tatum,*
    408 U.S. 1 (1972) .................................................................................17

*Lazy Y Ranch Ltd. V Behrens,*
    546 F.3d 580 (9th Cir. 2008) ...............................................................10

*Lower Elwha Band of S'Klallams v. Lummi Indian Tribe,*
    235 F.3d 443 (9th Cir. 2000) ...............................................................11

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ........................................................................16, 17

*Moore v. James H. Matthews & Co.,*
    682 F.2d 830 (9th Cir. 1982) ...............................................................11

*Oregon v. Legal Servs. Corp.,*
    552 F.3d 965 (9th Cir. 2009) ...............................................................16

*Rigel Pharms., Inc. Sec. Lit.,*
    697 F.3d 869 (9th Cir. 2012) ...............................................................10

*Thomas v. Bible,*
    983 F.2d 152 (9th Cir.1993) ..........................................................passim

*Three Rivers Provider Network, Inc. v. Meritain Health Inc.,*
    No. 07cv1900 WQH (BLM)2008 WL 4200587 (S.D. Cal. Sept. 10, 2008) ..........13

## **Statutes**

40 U.S.C. § 1315(c) .................................................................................2

## **Regulations**

41 C.F.R. §§ 102-74.365-.455 ...................................................................2

**INTRODUCTION**

In its Order of September 30, 2013, this Court held that the U.S. Customs and Border Protection's ("CBP") photography policy survives a strict scrutiny analysis under the First Amendment. *See* Order Grant. in Part and Deny. in Part Defs.' Mot. to Dismiss with Leave to Amend, ECF No. 42, at 13-14. Despite that holding and the dismissal of Plaintiffs' First Amendment challenges to the constitutionality of CBP's policy, based on the identical facts that gave rise to their original complaint, Plaintiffs now attempt to revitalize their First Amendment challenge by crafting their claims in a slightly different manner.

Regardless of the gloss Plaintiffs now attempt to place on their re-asserted First Amendment claims, the Court's prior holding as to the constitutional validity of CBP's photography policy remains controlling and renders Plaintiffs' First Amended Complaint subject to immediate dismissal. The Court's prior ruling upholding CBP's photography restrictions in the face of a First Amendment challenge was not "clearly erroneous;" the enforcement of that ruling would not work "a manifest injustice;" and there has been no intervening change in circumstances or controlling authority that would make reconsideration of the Court's prior ruling appropriate. *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir.1993). Accordingly, Plaintiffs' claims are precluded from review under the law-of-the-case doctrine, and should be promptly dismissed.

Moreover, to the extent Plaintiffs' re-fashioned claims rely on a so-called "reasonable fear" that CBP's policies might be applied against them to their detriment at some point in the future, those claims are subject to subject to dismissal for lack of standing. That purported injury is not concrete or particularized and is based on hypothetical future events that have not occurred and, indeed, may never occur. Such allegations are insufficient to meet the constitutional requirement of standing.

## BACKGROUND

**A.    CBP policy restricting photography on land ports of entry**

In their First Amended Complaint, Plaintiffs' challenge the First Amendment validity of CBP's photography policies. As discussed in Defendants' prior Motion to Dismiss (ECF No. 22), statutory and regulatory authority allow agencies to regulate certain conduct on federal property. *See generally* 40 U.S.C. § 1315(c); 41 C.F.R. §§ 102-74.365-.455. Included among this authority is the ability to close portions of federal property to the public as needed for the orderly conduct of government business, *see id*. § 102-74.365, and the discretion to inspect the possessions of visitors to federal property and to conduct a full search incident to arrest, *see id*. § 102-74.370. Federal regulations likewise impose restrictions on members of the public who visit federal property; for example, visitors are prohibited from loitering, exhibiting disorderly conduct, unreasonably obstructing entries and exits, or otherwise impeding or disrupting the performance of official duties by government employees. *See id*.

§ 102-74.390; *see also id*. §§ 102-74.380 (prohibiting destruction of property); 102-74.430 (traffic control); 102-74.400 - .405 (prohibiting alcohol and drugs); 103.74.435 - .440 (prohibiting explosives and weapons).  Nor can they distribute or post pamphlets, handbills, or flyers except as part of authorized government activities, *see id*. § 102-74.415, or conduct unauthorized solicitations for commercial, charitable, or political purposes, *see id*. § 102-74.410.  With respect to photography, federal regulations prohibit individuals on federal property from taking photographs or film of "space occupied by a tenant agency for non-commercial purposes" without "the permission of the occupying agency concerned."  *See id.* § 102-74.420(a).  "Except where security regulations, rules, orders, or directives apply," the regulations permit photography of "[b]uilding entrances, lobbies, foyers, corridors, or auditoriums for news purposes."  *Id.* § 102-74.420(c).

Pursuant to this authority, CBP has issued a national policy concerning photography on ports of entry.  *See* CBP Directive No. 5410-001B, Office of Public Affairs; Roles, Functions, Responsibilities (March 18, 2009), ECF No. 22-2.   That policy does not restrict photography taken or video made outside of CBP-controlled property.  *See id*. at part 6.2.2. ("CBP personnel should not prevent the lawful efforts of the news media to photograph, tape, record, or televise an enforcement action from outside a designated perimeter as long as the CBP-controlled area has not been breached.").  Instead, the policy applies only to individuals physically present on

CBP-controlled property.  Pursuant to the policy, authorization of such photography "shall be made in consultation with the appropriate Public Affairs Specialist and with the concurrence and control of the appropriate CBP supervisor."  *Id*. at part 6.2.3.  When deciding whether to authorize a photography request, CBP officials must act "without favoritism . . . while not compromising the DHS/CBP mission."  *Id.* at part 3.1.  Moreover, "responses to news organizations and individuals shall be tempered by concerns for on-going investigations; sensitive foreign activities; operational factors; detection, targeting and selectivity factors; techniques and capabilities; exchange of intelligence; and matters in litigation."  *Id*.  CBP officers retain the authority to detain a photographer and his or her recording equipment, but only if the individual "has violated federal law, unlawfully breached the security of a CBP facility, or has endangered the safety of CBP personnel."  *Id*. at part 6.2.4.

In addition to that directive, CBP's San Diego Office of Field Operations has issued media ground rules requiring advanced authorization of filming or photographing on port-of-entry property.  *See* U.S. Customs and Border Protection Ground Rules for News Media Representatives When Visiting Southern California Ports of Entry ("Media Ground Rules" or "Ground Rules"), ECF No. 22-3, at ¶ 1.  The Ground Rules "are operative at all times" due to "concerns for the privacy of the traveling public, integrity of law enforcement and investigative activities, and safety of visiting media representatives and the public."  *Id*.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.      Allegations in the Original Complaint**

Plaintiffs are two individuals who violated CBP policies regulating photography at ports of entry.  In the original Complaint, Mr. Askins alleged that in April 2012, he took photographs of the secondary inspection area at the Calexico port of entry as part of his interest in analyzing traffic pollutants at border crossings.  *See* Compl., ECF No. 1, ¶¶ 18-19, 22.  Mr. Askins admitted that he did not obtain advanced authorization from CBP to take such images, and he alleged that upon discovery of his conduct, CBP officials deleted the images, briefly detained him, and subjected him to a pat-down.  *See id*. ¶¶ 25-28.

In the original Complaint, Mr. Ramirez alleged that he also took unauthorized photographs of a CBP land port of entry.  While crossing a pedestrian bridge at the San Ysidro port of entry in June 2010, Mr. Ramirez alleged to have taken approximately ten cellular telephone pictures of CBP officers conducting inspections and pat downs at a security checkpoint.  *See id*. ¶¶ 37-39.  Mr. Ramirez alleged that he and his wife were detained by CBP authorities for approximately fifteen minutes and that the images he had taken were deleted from his phone.  *Id*. ¶¶ 46-49.  Aside from the April 2012 incident with Mr. Askins at the Calexico port of entry and the June 2010 incident with Mr. Ramirez at the San Ysidro port of entry, Plaintiffs did not contend that they have ever been prevented from photographing ports of entry, nor do

they contend that CBP has ever denied them a request for authorization to take photographs on port of entry property.

Plaintiffs filed their original Complaint in this case in October 2012, asserting claims under the First and Fourth Amendments against DHS and various DHS officials in their official capacities.[1]  Just as they do now, in their original Complaint, Plaintiffs alleged that CBP's restrictions on photography violated their First Amendment right to free speech by constituting an impermissible prior restraint that chills, deters, and infringes on Plaintiffs' right to free speech.  *Id.*  ¶¶ 55, 61.  In addition, Plaintiffs brought Fourth Amendment claims for unlawful search and seizure and excessive use of force.  *Id.* ¶¶ 62-73.  Plaintiffs sought declaratory and injunctive relief in the form of an order preventing CBP from restricting unauthorized photography on ports of entry, as well as relief preventing CPB from detaining and searching individuals who violate GSA regulations and CBP directives by taking unauthorized photographs on ports of entry.  *See id.*, Prayer for Relief at A-C.

**C.    This Court's prior rulings on Plaintiffs' claims**

In the four years since the inception of this case, the Court has made multiple rulings dismissing several of the claims Plaintiffs asserted in the original Complaint. The Court initially denied Plaintiffs' motion for a preliminary injunction, holding that

---

[1] Plaintiffs' original Complaint also asserted a host of claims against fifteen unnamed CBP officers in their individual capacities.  Those officers were never served, and Plaintiffs' First Amended Complaint does not assert any individual-capacity claims.

1   Plaintiffs were unlikely to prevail on their First Amendment claim because they failed

2   to establish a First Amendment right to photograph CBP officers executing their

3

4   duties at ports of entry or to photograph the interior portion of secondary inspection

5   areas at ports of entry. *See* Order Deny. Mot. for Prelim. Inj., ECF No. 35, at 7-11.

6

7   The Court also held that Plaintiffs had not shown that they would suffer irreparable

8   harm in the absence of an injunction or that an injunction would be in the public

9   interest. *Id*. at 10-12.

10

11       In September 2013, the Court issued an order (the "September 30, 2013 Order")

12   granting in part the federal defendants' Motion to Dismiss. *See* Order Grant. in Part

13   and Deny. in Part Defs.' Mot. to Dismiss with Leave to Amend, ECF No. 42, at 6-11.

14

15   The Court dismissed Plaintiffs' First Amendment claim challenging the

16   constitutionality of CBP's written photography policies, analyzing the claim under the

17   strict scrutiny standard of review.[2] *Id.*   The Court held that CPB's restrictions on

18

19   photography serve "perhaps the most compelling government interest: protecting the

20   territorial integrity of the United States." *Id*. at 10.  The Court further held that the

21   restrictions represent the "least restrictive alternative available to Defendants." *Id.*

22

23

24   [2] The Court applied a strict scrutiny standard in analyzing Plaintiffs' First Amendment
     claims because it found a factual dispute existed as to whether the photography in
25   question occurred in areas traditionally considered as public fora and because the
     policy in question was not content-neutral. *Id.* at 6-10.  While the government
26   respectfully disagrees with the Court's analysis on those issues and maintains that
     CBP's policy should have been analyzed under a standard of reasonableness, the
27   Court's holding nevertheless forecloses the claims Plaintiffs now attempt to assert in
     their First Amended Complaint.
28

The Court thus rejected Plaintiffs' arguments that CBP's photography policies were both over-inclusive and under-inclusive, and instead affirmed the constitutional validity of those policies. *Id*. at 10-11. The September 30, 2013 Order further narrowed the claims at issue in this case; the Court dismissed Plaintiffs' Fourth Amendment claims to the extent those claims were founded on Plaintiffs' contention that CBP's policies condone deletion of photographs. *Id*. at 14. In a subsequent order, the Court clarified that CBP's policies comport with the Fourth Amendment and accordingly dismissed with prejudice Plaintiffs' claims to the contrary. *See* Order Granting-in-Part Defs.' Mot. for Recons., ECF No. 56, at 25. The Court declined at that time to dismiss the possibility that Plaintiffs could raise a Fourth Amendment claim alleging that CBP engages in a pattern or practice of searching and seizing individuals *outside* of port of entry property. *Id*. Nevertheless, in their First Amended Complaint, Plaintiffs have declined to assert any Fourth Amendment claims.

**D.    Plaintiffs' First Amended Complaint**

In November 2015, Plaintiffs filed their First Amended Complaint ("FAC"), which asserts three First Amendment challenges to CBP's restrictions on photography. The first claim presents a facial challenge to CBP's restrictions on photography on the theory that those restrictions violate the First Amendment because they "require advance permission to take photographs of matters . . . of public interest exposed to public view . . . ." *See* First Amend. Compl. for Decl. and Inj. Relief ¶

119, ECF No. 60.  The second and third claims raise as-applied challenges; the second

claim alleges that CBP's restrictions on photography violate Mr. Askins' First

Amendment rights to "take photographs of matters . . . of public interest exposed to

public view," and the third claim makes identical allegations with respect to Mr.

Ramirez.  *Id.* ¶¶ 121-24.   These three claims arise from the exact same two incidents

described in the original Complaint.  With respect to their as-applied challenges,

however, Plaintiffs appear to differentiate their current claims from those asserted in

the original Complaint by alleging that they now have a "reasonable fear" that if they

try again to take photographs at CBP ports of entry, CBP "can and will continue to

enforce the Policy and Ground Rules" to prohibit them from photographing "matters

and events exposed to public view from outdoor or exterior areas" of the Calexico and

San Ysidro ports of entry.  *Id.* ¶¶ 66-69, 111-14.  Surprisingly, Mr. Ramirez makes

this contention despite conceding that the pedestrian bridge from which he originally

took photographs in June 2010 has subsequently been decommissioned and no longer

exists.  *Id.* ¶¶ 101-10.

Notably, unlike in their original Complaint, Plaintiffs' FAC does not attempt to

allege First Amendment "pattern or practice" claims.  *Compare* Compl., ECF No. 1,

¶¶ 55, 61 (alleging that CBP has a "policy and/or *practice*" of not allowing

unauthorized photography which constitutes "an impermissible prior restraint on

speech" (emphasis added)) *with* FAC, ECF No. 60, ¶¶ 119, 121-22, 124-25 (alleging that only "the Policy and Ground Rules" violate the First Amendment).

Plaintiffs seek a declaratory judgment and an injunction prohibiting Defendants from precluding their ability to photograph matters exposed to public view "from exterior or outdoor areas of ports of entry." *Id*.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true."  *In re Rigel Pharms., Inc. Sec. Lit.*, 697 F.3d 869, 875 (9th Cir. 2012) (citing *Twombly*, 550 U.S. at 555).  The Court's "review of challenges to a dismissal for failure to state a claim is generally limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of which [the Court] may take judicial notice." *Id*. at 875-76.  The Court "need not accept as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice." *Lazy Y Ranch Ltd. V Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

**ARGUMENT**

The Court has already held in this matter that the photography policies that Plaintiffs challenge in the FAC are constitutionally permissible; indeed, the Court has held that those policies survive a First Amendment challenge even under the strict scrutiny standard of review.  Plaintiffs' claims are therefore barred by the-law-of-the-case doctrine and should be promptly dismissed for failure to state a claim.

The law-of-the-case doctrine recognizes that a court's resolution of a legal issue is binding on the parties for the duration of the litigation.  Under this doctrine, "a court is generally precluded from reconsidering an issue previously decided by the same court in the identical case." *Goodrich & Pennington Mortg. Fund, Inc. v. Chase Home Fin., LLC*, No. 05cv636 (JLS), 2008 WL 698464, at *5 (S.D. Cal. March 14, 2008) (quoting *Lower Elwha Band of S'Klallams v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000) (internal ellipsis omitted).  Limited exceptions to the doctrine apply, although the Ninth Circuit has cautioned that "the discretion to review earlier decisions should be exercised sparingly so as not to undermine the salutary policy of finality that underlies the rule." *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 834 (9th Cir. 1982); *see also Thomas*, 983 F.2d at 155 (holding that a district court's "failure to apply the doctrine of law of the case constitutes an abuse of discretion").  As such, a court may depart from a prior ruling *only* where "1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence

on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result." *Thomas*, 983 F.2d at 155.   None of these exceptions apply here; rather, all three claims asserted in the FAC concern issues that have already been addressed by this Court.  Those claims, therefore, should be dismissed under the law of this case.

**A.      The Court should dismiss Claim One based on the Court's prior ruling upholding CBP's written photography policy as constitutional**

This Court's September 30, 2013 Order expressly held that "CBP's photography policy survives the strict scrutiny analysis due to the extremely compelling interest of border security and the fact that the Court finds the current policy to be the least restrictive alternative available to Defendants."  Sept. 30, 2013 Order at 11.  Despite this clear ruling, in Claim One of the FAC, Plaintiffs now seek to revive their First Amendment challenge to the photography policy.  Plaintiffs contend that the "Policy and Ground Rules are prior restraints that violate the First Amendment" because they "require advance permission to take photographs of matters or events of public interest exposed to public view in exterior and outdoor areas of port of entry property."  FAC ¶ 119.

But Plaintiffs provide no grounds in their FAC for the Court to disregard its prior ruling—there has been no change in the controlling law, no substantially different evidence has been adduced, and Plaintiffs do not claim that the Court's ruling in this regard was clearly erroneous.  *See Thomas*, 983 F.2d at 155.

Accordingly, the Court's prior ruling on this issue dictates dismissal of Claim One in the FAC. *See, e.g.*, *Three Rivers Provider Network, Inc. v. Meritain Health Inc.*, No. 07cv1900 WQH (BLM), 2008 WL 4200587, at *2 (S.D. Cal. Sept. 10, 2008) ("To the extent the second amended complaint includes previously dismissed claims, the prior ruling of the Court would apply as law of the case.").

Moreover, the Court has already explicitly rejected the two bases Plaintiffs proffer as grounds for striking down CBP's policies, *i.e.* that the policy might encompass matters exposed to public view and that the policy provides too much discretion to CPB officials.  The Court rejected Plaintiffs' challenge to the breadth of the matters encompassed by the policy in holding that the policy represents the "least restrictive alternative available to Defendants." *Id*. at 10.   With respect to the discretion provided to CBP officials, the Court has already concluded that the policy "provides sufficient safeguard against officer discretion," including the fact that CPB requires any authorization be consistent with CPB's mission and precludes using favoritism when deciding to take action on a request. *Id*. at 11.

In short, the Court has already rejected the key supporting allegations now advanced by Plaintiffs in support of their first claim.  Thus, that claim is precluded by the law of this case.

**B.      The Court should dismiss the remaining claims because the Court's prior rulings make clear that CBP policy is constitutional**

The law of the case also compels dismissal of Claims Two and Three of the FAC.  Other than being asserted by different plaintiffs, claims two and three are identical in scope.  Each alleges that CBP's restrictions on photography and the enforcement of those restrictions violate the First Amendment by "unreasonably restricting [plaintiffs'] right to take photographs of matters and events of public interest exposed to public view from exterior or outdoor areas of the . . . ports of entry."  FAC ¶¶ 121-125.   In support of these claims, Plaintiffs assert that "it is irrational to prohibit the photography of such matters and events [exposed to public view], regardless of the nature of the forum from which they are taken" and that, to the extent CBP's policy extends to prohibiting the unauthorized taking of pictures from public fora, they are not narrowly tailored.  *Id*.

Both of these claims are precluded by the law of this case.  As discussed above, the Court's September 30, 2013 Order expressly rejected the conclusion that the policy was unconstitutional because it requires advance permission to record matters exposed to public view.  Sept. 30, 2013 Order at 10.  In so doing, the Court explained that "many issues of border security 'exposed to public view,' such as the identity of CBP officers and search techniques, would be unprotected under" a rule that applied only to matters not visible to public view.  *Id*.  The Court also described a photography rule limited to photography of private matters as being "impractical" and

"impossible to enforce" given the difficulty border agents would have in determining who was and who was not complying with such a rule. *Id*. at 10-11. Thus, because the Court has already established that the restrictions cannot be deemed unconstitutional merely because they apply to the photographing of matters that may exposed to public view, claims two and three are precluded and must be dismissed.

Moreover to the extent claims two and three are contingent upon an allegation that the policy restricts would-be photographers located on public fora, those claims are also precluded by the Court's September 30, 2013 Order. As noted above, the Court applied the strict scrutiny standard of review in its earlier decision because it concluded that Plaintiffs had pleaded in their original Complaint that they were on public fora when they took the photographs in question. September 30, 2013 Order at 8 ("Plaintiffs have plausibly plead that Mr. Ramirez was in a public forum when he took the photographs at issue here"); *id.* at 9 ("Plaintiffs have sufficiently alleged that Mr. Askins was also in a public forum when he took the photographs in question"). Despite finding that Plaintiffs were located in a public fora when taking the photographs at issue, the Court nevertheless upheld the Policy and Ground Rules as compliant with the First Amendment under the strict scrutiny standard. *Id.* at 7-9. Thus, because the Court has already determined that the Policy and Ground Rules are constitutional— even when applied in a public forum—any claim to the contrary must be dismissed.

**C.     Plaintiffs fail to assert an injury sufficient to establish standing**

As part of the case or controversy requirement of Article III of the Constitution, a plaintiff must have standing to sue.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  To meet the "irreducible constitutional minimum of standing," a plaintiff must demonstrate that he has suffered an "injury in fact" that is "fairly traceable" to the conduct of the defendant and which is "redressable by a favorable decision" of the court. *Id.* The alleged injury must be concrete and particularized as well as "actual or imminent, not conjectural or hypothetical."  *Id.* at 560 (quotations omitted); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983) (threat of injury must be "real and immediate");  *see also Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 891 (9th Cir. 2007) (holding that the *Lujan* elements of standing apply to First Amendment overbreadth challenges).  Moreover, the Supreme Court has affirmed that, even in the First Amendment context, a claimed injury "must be certainly impending" and it is not enough merely to allege a subjective fear of injurious government action, even if that subjective fear is itself "not fanciful, irrational, or clearly unreasonable."  *Clapper v. Amnesty Int'l USA*, —— U.S. ——, 133 S. Ct. 1138, 1147-48 (2013).  As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing these elements.  *Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 969 (9th Cir. 2009).

Here, Plaintiffs appear to be attempting to assert an injury based on a so-called "reasonable fear" that if they try again to take photographs at CBP ports of entry, CBP might prohibit them from photographing "matters and events exposed to public view from outdoor or exterior areas" of the Calexico and San Ysidro ports of entry. FAC ¶¶ 66-69, 111-14. These allegations are based on hypothetical future events that may not occur as anticipated and, indeed, may never occur at all. Moreover, the four years that have passed without incident to Mr. Askins demonstrates that his alleged fear of CBP action is unreasonable and that no injury to him is certainly impending. Similarly, the six years that have passed without incident to Mr. Ramirez demonstrates that his alleged fear of CBP action is unreasonable and that no injury to him is certainly impending. Mr. Ramirez's alleged fear is even more conjectural given that the bridge upon which he took the disputed photographs no longer exists.

Put simply, Plaintiffs do not present an objective threat of specific future harm, and "[a]llegations of a subjective 'chill' are not . . . adequate" to confer standing. *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972). Plaintiffs' failure to meet the requirement of constitutional standing deprives the Court of jurisdiction to entertain the complaint. *Lujan*, 504 U.S. at 559-60.

## CONCLUSION

For the reasons stated herein, Defendants respectfully request that the Court dismiss Plaintiffs' First Amended Complaint.

DATED: December 18, 2015                Respectfully Submitted,


                                        BENJAMIN C. MIZER
                                        Principal Deputy Assistant Attorney General

                                        JOHN R. TYLER
                                        Assistant Director, Federal Programs Branch


                                        /s/ *Stephen J. Buckingham*
                                        NATHAN M. SWINTON (NY Bar)
                                        STEPHEN J. BUCKINGHAM (MD Bar)
                                        Trial Attorney, Federal Programs Branch
                                        U.S. Department of Justice, Civil Division
                                        20 Massachusetts Avenue, NW
                                        Washington, DC 20530
                                        Tel.  202-514-3330
                                        Fax.  202-616-8470
                                        Stephen.Buckingham@usdoj.gov

                                        *Attorneys for Defendants*