DAVID LOY (CA SBN 229235)
davidloy@aclusandiego.org
MITRA EBADOLAHI (CA SBN 275157)
mebadolahi@aclusandiego.org
JONATHAN MARKOVITZ (CA SBN 301767)
jmarkovitz@aclusandiego.org
ACLU FOUNDATION OF SAN DIEGO &
IMPERIAL COUNTIES
P.O. Box 87131
San Diego, California  92138-7131
Telephone: 619.232.2121

Attorneys for Plaintiffs
RAY ASKINS AND CHRISTIAN RAMIREZ

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAY ASKINS and CHRISTIAN RAMIREZ,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY; R. GIL KERLIKOWSKE, Commissioner of United States Customs and Border Protection; BILLY WHITFORD, Director, Calexico Port of Entry; SIDNEY K. AKI, Director, San Ysidro & Otay Mesa Ports of Entry,<br><br>　　　　　　Defendants. | Case No. 3:12-cv-02600-W-BLM<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ............................................................. ii-iv

**Introduction** .................................................................................. 1

**I.     Factual and Procedural Background** ............................................ 2

A. Defendants' Policies Respecting Photography At Ports of Entry ........................ 2

B. Interference with Plaintiff Askins' First Amendment Rights............................. 3

C. Interference with Plaintiff Ramirez's First Amendment Rights........................... 6

D. Procedural History ............................................................... 8

**II.    Legal Standard for Deciding Motion to Dismiss** ........................................ 9

**III.   Argument**................................................................................ 10

A. Properly Understood, the "Law of the Case" Doctrine Does Not Prevent the Court from Deciding Whether Plaintiffs State a Claim under the First Amendment………………………………………………………………..10

B. Plaintiffs State Claims Under the First Amendment…………………………..13

  1. The First Amendment Protects the Right to Photograph Matters of Public Interest Exposed to Public View, Including Government Officials Engaged in Their Duties in Public Places……………………………………………..13

  2. Defendants' Policy and Ground Rules, Both As Written and As Enforced Against Each Plaintiff, Violate the First Amendment………………………....15

       a. To the Extent Plaintiffs Seek to Exercise Their First Amendment Rights from Public Forums, CBP's Policies Are Not Content Neutral or Narrowly Tailored and Do Not Leave Open Ample Alternative Channels for Plaintiffs' Expression………………..16

       b. To the Extent Defendants Apply Their Policy and Ground Rules to Nonpublic Forums At Ports of Entry, These Restrictions Are Unreasonable and Are Not Viewpoint Neutral…………………...21

C. Plaintiffs Have Standing to Challenge Defendants' Restrictions of Their First Amendment-Protected Activities ............................................................. 23

**Conclusion** .................................................................................. 25

i

# TABLE OF AUTHORITIES

## Cases

*ACLU of Ill. v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012) ..................................... 15

*ACLU of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1101–02 (9th Cir. 2003) ... 19

*Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) ............................................... 12

*Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 131 S. Ct. 2806, 2828 (2011) ............................................................................................................................ 17

*Ariz. Right to Life Polit. Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003 ........................................................................................................................ 25, 26

*Ark. Educ. TV Comm'n v. Forbes*, 523 U.S. 666, 678 (1998) ................................. 19

*Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001) ........................................... 27

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................................. 12

*Berger v. City of Seattle*, 569 F.3d 1029, 1051 (9th Cir. 2009) ........................ 19, 21

*Bowers v. NCAA*, 9 F. Supp. 2d 460, 466 n.3 (D.N.J. 1998) .................................... 12

*Butterworth v. Smith*, 494 U.S. 624, 632 (1990) ...................................................... 17

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011) ............................................................................................................................ 12

*Child Evangelism Fellowship of Md., Inc. v. Montgomery Co. Pub. Sch.*, 457 F.3d 376, 384 (4th Cir. 2006) ............................................................................................ 24

*City of Houston v. Hill*, 482 U.S. 451, 462–63 (1987) ............................................. 17

*City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 889 (9th Cir. 2001) ...................................................................................................................... 13, 14

*Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1148 (2013) ................................. 27

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 945 (9th Cir. 2011) ..................................................................................................... 18

*Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 797 (1985) . 17,18, 23

*Faustin v. City, Cnty. of Denver*, 268 F.3d 942, 950 (10th Cir. 2001) .................... 26

*Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995) ................................... 15

*Forsyth Cnty v. Nationalist Movement*, 505 U.S. 123, 130 (1992) ......................... 19

*Frisby v. Schultz*, 487 U.S. 474, 485 (1988) ............................................................. 21

*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 227 (1990) ................................ 19, 22

*Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 895 (9th Cir. 2007) ...... 26

*Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011) ................................. 15, 16, 17, 21

*Goodrich & Pennington Mortg. Fund, Inc. v. Chase Home Fin., LLC*, No. 05CV636 (JLS), 2008 WL 698464, at *5 (S.D. Cal. Mar. 14, 2008) .................. 14

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Proj. HDTV TV Litig.*, 758 F.
Supp. 2d 1077, 1098 (S.D. Cal. 2010) ............................................................... 13

*Kaahumanu v. Hawaii*, 682 F.3d 789, 800 (9th Cir. 2012) ..........................23, 25, 26

*Laird v. Tatum*, 408 U.S. 1, 14 (1972).............................................................. 27

*Libertarian Party of L.A. City v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013) ....25, 26

*Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1023 (9th
Cir. 2009)...................................................................................................... 19, 21

*LSO, Ltd. v. Stroh,* 205 F.3d 1146 (9th Cir. 2000) ............................................26, 27

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) ...........................25, 27

*Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011).................................. 25

*Moore v. James H. Matthews & Co.*, 682 F.2d 830, 834 (9th Cir. 1982) ............... 14

*Morse v. Frederick*, 551 U.S. 393, 423 (2007)....................................................... 25

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 913 (1982) ............................ 17

*Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014) (en banc), *cert. denied*, 135
S. Ct. 946 (2015) ............................................................................................... 13

*Ramirez v. City of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) ............. 11

*Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015)......................................... 20

*Riley v. Nat'l Fed'n of Blind of N.C., Inc.*, 487 U.S. 781, 802 (1988) .................... 22

*Robinson v. Fetterman*, 378 F. Supp. 2d 534, 542 (E.D. Pa. 2005)........................ 16

*Rocky Mountain Farmers Union v. Goldstene*, 843 F. Supp. 2d 1042, 1060 (E.D.
Cal. 2011), *aff'd*, 730 F.3d 1070 (9th Cir. 2013) ................................................. 13

*Sammartano v. First Judicial Dist. Ct.*, 303 F.3d 959, 966–67 (9th Cir. 2002),
*abrogated on other grounds by Winter v. NRDC*, 555 U.S. 7 (2008)............23, 24

*Schneider v. New Jersey*, 308 U.S. 147, 163 (1939) ............................................... 24

*Securing Our Borders: Hearing Before Subcomm. on Border & Maritime Sec. of H.
Comm. on Homeland Sec.*, 112th Cong. 8 (2011).................................................. 16

*Smith v. Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) ..................................... 16

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)............................................... 12

*Stewart v. Dist. of Columbia Armory Bd.*, 863 F.2d 1013, 1018 (D.C. Cir. 1988)..24

*Thomas v. Bible*, 983 F.2d 152, 155 (9th Cir. 1993) .........................................14, 15

*Three Rivers Provider Network, Inc. v. Meritain Health Inc.*, No. 07CV1900 WQH
(BLM), 2008 WL 4200587 (S.D. Cal. Sept. 10, 2008)....................................... 14

*U.S. v. Grace*, 461 U.S. 171, 177 (1983)..........................................................18, 19

*U.S. v. Marcavage*, 609 F.3d 264, 278 n.9 (3d Cir. 2010) ..................................... 18

*U.S. v. Smith*, 389 F.3d 944, 950 (9th Cir. 2004) ................................................... 14

*United Food & Comm. Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit*

*Auth.*, 163 F.3d 341, 357 (6th Cir. 1998) ..............................................................23

*Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ...........................................12

**TREATISES**

18B Wright & Miller, *Fed. Prac. & Proc. Juris.* § 4478.1 (2d ed.) ........................13

**Other Authorities**

*Securing Our Borders: Hearing Before Subcomm. on Border & Maritime Sec. of H. Comm. on Homeland Sec.*, 112th Cong. 8 (2011).................................................16

**Introduction**

Above all else, the First Amendment guarantees the right to document and criticize the government's actions, by photography or otherwise. To exercise that right, Plaintiffs Ray Askins and Christian Ramirez attempted to take photographs of outdoor matters exposed to public view at ports of entry in Calexico and San Ysidro. Due to official policies prohibiting such photography without advance permission, U.S. Customs and Border Protection ("CBP") officers detained them, searched their persons or devices, and deleted their photographs. Plaintiffs want to continue taking similar photographs, but they are not doing so because of these policies and their enforcement.

Plaintiffs have now filed an amended complaint clarifying and updating material facts and raising First Amendment claims against these policies. Although the Court addressed the policies in ruling on a previous motion to dismiss, that ruling does not preclude the Court from deciding whether the amended complaint states a claim. The "law of the case" doctrine only requires trial courts to comply with previous rulings of an appellate court in the same case. It does not limit this Court's power to reconsider its rulings before judgment or appeal.

On the merits, Plaintiffs state a claim that the policies violate the First Amendment, regardless of the nature of the forum at issue. To the extent they cover outdoor streets, sidewalks, and open plazas, the policies are an unconstitutional prior restraint on speech in a traditional public forum. They are improperly based on the content of speech because they allow CBP to permit or deny speech based on its compatibility with CBP's "mission." Even if the policies are content-neutral, they are not narrowly tailored to significant interests, because they disregard obvious alternatives for protecting those interests, such as concealing any allegedly confidential matters from outdoor public view. The policies also fail to provide ample alternatives for Plaintiffs' protected speech. To the extent the policies cover nonpublic forums, they remain unconstitutional because they are neither reasonable

nor viewpoint neutral. The policies irrationally prohibit speech that does not threaten any legitimate governmental interest, not least because they prohibit photography of matters exposed to public view. Because the policies contain no meaningful criteria for issuing a permit, they also confer unbridled discretion to allow or prohibit speech and thus create an excessive risk of viewpoint discrimination, even if such discrimination has not occurred. Accordingly, on the facts pleaded, the policies violate the First Amendment.

Plaintiffs have standing to challenge these policies, which prohibit the photographs Plaintiffs want to take and which have been enforced against them. The mere existence of a prior restraint on a plaintiff's intended speech confers standing to challenge that restraint. A plaintiff need not apply for a permit to engage in speech to challenge the permit requirement, nor must a plaintiff risk detention, search, or arrest by violating the policy. Plaintiffs are refraining from taking photographs at ports of entry due to a well-founded fear of further enforcement of CBP's policies against them. The policies and their enforcement therefore have a chilling effect on Plaintiffs' speech sufficient to create standing.

## I.      Factual and Procedural Background

As pleaded in the First Amended Complaint, Plaintiffs are deeply committed to environmental and social justice issues affecting the U.S.-Mexico border. In similar incidents at separate ports of entry, CBP officers interfered with Plaintiffs' protected speech by detaining, questioning, and searching their persons or devices as well as deleting photographs they had taken of matters exposed to public view in outdoor areas. In so doing, these officers acted pursuant to written policies prohibiting photography at ports of entry without CBP's prior approval.

### A. Defendants' Policies Respecting Photography At Ports of Entry

Along the U.S.-Mexico border, the Department of Homeland Security ("DHS") either owns or leases from other agencies large swaths of property,

including ports of entry.[1] (First Amended Complaint ("FAC") ¶ 7.) CBP has a national policy that prohibits photography on any port of entry property without advance official permission (hereinafter, "Policy"). (*Id.* ¶ 8; *id.* at Exh. A (CBP Directive No. 5410-001B).) This Policy applies both inside and outside port of entry buildings and does not limit CBP officials' discretion to grant or deny permission to take photographs. (FAC ¶ 9.) The Policy reserves to CBP the effectively unbridled right to prohibit photography it believes may "compromis[e] the DHS/CBP mission." (FAC Exh. A, ¶ 3.1.)

CBP also has media "ground rules" for "Southern California ports of entry" (hereinafter, "Ground Rules"). (FAC ¶ 10; *id.* at Exh. B (Ground Rules).) The Ground Rules—which CBP applies to all persons—require advance authorization from CBP officials to take photographs on any port of entry property. (FAC ¶ 10.) Like the Policy, the Ground Rules apply both inside and outside port of entry buildings, and do not meaningfully limit CBP officials' discretion. (*Id.*)

**B. Interference with Plaintiff Askins' First Amendment Rights**

Plaintiff Ray Askins is a U.S. citizen who has been active in documenting and publicizing environmental pollution and other public health problems in Imperial County and Mexicali since the late 2000s. (FAC ¶¶ 32–33; 39–44.) His environmental advocacy involves research, investigation, and analysis of CBP activities. (*Id.* ¶ 39.) He is especially interested in how emissions from idling vehicles awaiting inspection at ports of entry contribute to environmental pollution and health problems. (*Id.*) According to the California Department of Public Health, Imperial County's poor air quality, combined with lack of access to primary health care providers, have contributed to high rates of asthma in the area. (*Id.* ¶ 36.)

---

[1] For convenience, the terms "port of entry" or "port of entry property" encompass all such property, whether owned or leased by DHS and/or CBP, to which Defendants assert the Policy and Ground Rules described here apply.

Calexico residents are exposed to harmful particulate matters in the air: the highest levels and most destructive particulates are near the border crossing. (*Id.*)

In spring 2012, Mr. Askins was preparing for a conference entitled "Health Impacts of Border Crossings." (*Id.* ¶¶ 45–46.) For this purpose, Mr. Askins planned to visit the Calexico West port of entry and photograph the secondary vehicle inspection area to demonstrate that CBP did not make full and proper use of the area, resulting in excessive vehicle idling and emissions. (*Id.* ¶ 47.)

The day before his planned visit, Mr. Askins telephoned CBP Officer John Campos and requested permission to take a few photographs inside the secondary inspection area. (*Id.* ¶ 48.) Officer Campos said this would be inconvenient, but otherwise did not object. (*Id.*) Mr. Askins followed up the next day, and, when Officer Campos did not answer his phone, Mr. Askins left a voicemail clarifying that he would stand on the street outside the port of entry building to photograph the exit of the secondary inspection area. (*Id.* ¶ 49.)

That same afternoon, Mr. Askins stood near the shoulder at the intersection of two public streets, First Street and Paulin Avenue. (*Id.* ¶ 50.) There, he faced the secondary inspection area's exit, approximately fifty to 100 feet in front of where he stood. (*Id.*) Immediately behind Mr. Askins was the Genaro Teco Monroy Memorial International Border Friendship Park, a small public park also overlooking the secondary inspection area. (*Id.* ¶ 51.) Both the intersection and the park are public forums open to speech and expressive activity by tradition and past usage. (*Id.* ¶ 52.) Defendants consider some or all of these areas to be part of the Calexico West port of entry, and/or to be areas to which both their Policy and Ground Rules apply. (*Id.*)

From this vantage point, <u>outdoors and outside of any port of entry building or structure</u>, Mr. Askins took three or four photographs of the exit of the secondary inspection area. (*Id.* ¶ 53.) The building exterior Mr. Askins photographed was exposed to public view from outdoor areas of port of entry property and adjacent

public property (including the park). (*Id.* ¶ 55.) Additionally, when taking these photographs, Mr. Askins was not engaged in the act of crossing the border; rather, he was standing outdoors within the United States. (*Id.* ¶ 56.)

Shortly after Mr. Askins took the photographs, a number of CBP officers approached and demanded that he delete the pictures. When Mr. Askins refused and explained that the photographs were his property, one or more of the CBP officers threatened to smash his camera. (*Id.* ¶¶ 57–59.) Mr. Askins was handcuffed and his camera, passport, car keys, and hat were confiscated; he was then detained and searched. (*Id.* ¶¶ 59, 61–62.) Upon his release, Mr. Askins discovered that CBP officers had deleted all but one of the photographs he had just taken. (*Id.* ¶ 64.)

Immediately after this incident, Mr. Askins sent a complaint to Calexico Port Director Billy Whitford. (*Id.* ¶ 65.) In a written reply, Director Whitford stated:

> In response to the issues raised in your complaint, the area in question is currently under the jurisdiction of [General Services Administration] and CBP. CBP security policies prohibit visitors at CBP-controlled facilities from using cameras and video recording devices without the prior approval from the senior CBP official (Port Director or designee).

(*Id.*; *see also id.* at Exh. D (email from Whitford to Askins (Apr. 20, 2012)).)

Mr. Askins wants to continue photographing matters and events exposed to public view from outdoor areas of the Calexico port of entry, over which CBP asserts authority to prohibit photography. (FAC ¶ 66.) He seeks to photograph matters outside port of entry buildings, such as vehicular traffic and CBP officers performing their duties, to document environmental pollution and human rights abuses. (*Id.* ¶ 67.) Because of the Policy and Ground Rules and their enforcement against him, however, Mr. Askins has refrained and continues to refrain from taking such photographs, because he has an ongoing reasonable fear that such photography will subject him to detention or arrest and confiscation of his personal property. (*Id.* ¶¶ 66, 68.) CBP's enforcement of the policies has, therefore, chilled and prevented Mr. Askins from exercising his First Amendment rights. (*Id.* ¶ 69.)

- 5 -

### C. Interference with Plaintiff Ramirez's First Amendment Rights

Plaintiff Christian Ramirez, a U.S. citizen, is a policy advocate and leading expert on border-related civil and human rights abuses. (FAC ¶ 72.) He regularly travels to the U.S.-Mexico border to visit family members in Mexico, observe law enforcement activity, and monitor human rights issues. (*Id.* ¶ 75.)

CBP consistently refuses to disclose whether officers engaged in misconduct are disciplined, shielding both the agency and individual officials from public accountability. (*Id.* ¶ 5.) In recent years, the physical abuse of persons by CBP has been rampant; given the agency's utter lack of transparency, the public interest in timely access to information regarding CBP's actions cannot be overstated. (*Id.* ¶ 6.) Members of the public, like Mr. Ramirez, seek to document CBP activity at or near ports of entry to safeguard against rights abuses, including excessive use of force and racial profiling. (*Id.* ¶ 78.)

In June 2010, Mr. Ramirez and his wife visited Mr. Ramirez's father in Mexico. (*Id.* ¶ 79.) The same afternoon, Mr. and Mrs. Ramirez reentered the United States without incident. (*Id.* ¶ 80.) The pair then crossed a pedestrian bridge that passed over the southbound lanes of Interstate 5. (*Id.*) In doing so, Mr. Ramirez noticed that male CBP officers at a security checkpoint were inspecting and patting down female travelers. (*Id.* ¶ 81.) Concerned that these officers were acting inappropriately, Mr. Ramirez observed the checkpoint for ten to fifteen minutes and took approximately ten photographs using his cell phone camera. (*Id.* ¶ 82.) The events and individuals Mr. Ramirez photographed were exposed to public view in outdoor areas of the San Ysidro port of entry. (*Id.* ¶ 85.) Additionally, while observing the checkpoint and taking photographs, Mr. Ramirez was neither engaged in the act of crossing the border nor inside any building. (*Id.* ¶ 84.)

Mr. Ramirez and his wife were approached on the pedestrian bridge by two men who appeared to be private security officers. (*Id.* ¶ 86.) One asked for Mr. Ramirez's identification documents; Mr. Ramirez declined to hand these over,

explaining that he had already entered the United States. (*Id.* ¶ 87.) Mr. Ramirez was then ordered to stop taking photographs and one of the private security officers attempted to grab him. (*Id.* ¶ 88.) As Mr. Ramirez and his wife tried to leave the bridge, the security officers followed them, and Mr. Ramirez overheard them call for backup. (*Id.* ¶ 89.)

When Mr. Ramirez and his wife reached the bottom of the bridge, five to seven CBP officers were waiting. (*Id.* ¶ 90.) The officers asked whether and why Mr. Ramirez had taken any photographs; he replied that he had done so because he had witnessed what he believed to be inappropriate CBP activity. (*Id.*) The officers demanded that Mr. Ramirez turn over his cell phone; he refused, although he offered to show the officers the photographs. (*Id.* ¶ 91.) A CBP officer confiscated Mr. Ramirez's cell phone and deleted the photographs, without Mr. Ramirez's consent, before returning the phone to Mr. Ramirez. (*Id.* ¶¶ 94–95.) In so doing, the officer destroyed contemporaneous evidence of possible CBP misconduct.

In recent years, the San Ysidro port of entry has undergone significant reconstruction. (*Id.* ¶¶ 101–106.) For example, a new pedestrian bridge replaced the bridge where Mr. Ramirez encountered CBP officers in 2010. (*Id.* ¶¶ 102–104.) Notwithstanding these changes, Mr. Ramirez continues to wish to exercise his First Amendment rights to photograph and otherwise record matters exposed to public view from outdoor areas at the current San Ysidro port of entry to document civil and human rights abuses along the U.S.-Mexico border. (*Id.* ¶¶ 107, 109–113.)

Specifically, Mr. Ramirez wants to exercise his First Amendment rights to photograph and record matters exposed to public view from one or more of the following outdoor areas, over which CBP asserts authority to prohibit photography: (1) the transit plaza on San Ysidro Boulevard and the adjacent sidewalk; (2) the new pedestrian bridge connecting San Ysidro Boulevard to the east and Camiones Way to the west, which does not connect to the border crossing or to any port of entry building or edifice; and (3) the footpath leading from the transit plaza and

adjacent sidewalk to Mexico. (*Id.* ¶¶ 105, 107.) In or near these areas, there are several official U.S. government signs posted that appear to prohibit any form of photography. (*Id.* ¶ 108.)

Mr. Ramirez remains deeply committed to documenting civil and human rights violations at San Ysidro and throughout the border region, especially excessive force and racial or religious profiling. (*Id.* ¶ 110.) He wants to continue photographing matters exposed to public view at the San Ysidro port of entry as soon as he is able to do so without CBP interference. (*Id.* ¶ 113.) Because of the 2010 incident, however, Mr. Ramirez has refrained and continues to refrain from photographing any matters exposed to public view from outdoor areas of the San Ysidro port of entry. (*Id.* ¶ 111.) As a result of his experience and in light of CBP's policies, he has an ongoing reasonable fear that such photography will subject him to detention or arrest and confiscation of his personal property by CBP officers. (*Id.* ¶¶ 112, 114.) CBP's enforcement of the policies has, therefore, chilled and prevented Mr. Ramirez from exercising his First Amendment rights. (*Id.* ¶ 115.)

### D. Procedural History

The original complaint included First and Fourth Amendment claims on behalf of both plaintiffs. (Dkt. No. 1.) The First Amendment claims challenged both CBP's Policy and Ground Rules and an unlawful pattern or practice.

Plaintiffs moved for a preliminary injunction. (Dkt. No. 19-1.) Defendants opposed, Dkt. No. 27, and moved to dismiss. (Dkt. No. 22-1.) The Court denied the injunction and granted the motion to dismiss in part. (Dkt. Nos. 35, 42.) As relevant here, the Court held that under the original complaint, CBP's Policy and Ground Rules were content-based restrictions on speech in a public forum, and furthermore

that these policies were constitutional. (Dkt. 42 at 7–11.) Leave to amend was granted with respect to Plaintiffs' policy-based First Amendment claims. (*Id.*)[2]

Defendants moved for reconsideration and/or clarification, urging the Court to also dismiss Plaintiffs' First Amendment "pattern or practice" claims and to reconsider its grant of leave to Plaintiffs to amend their policy-based claims. (Dkt. No. 46-1 at 2–5.) As to these requests, the Court denied Defendants' motion. (Dkt. No. 49 at 4–5.) Further briefing was completed with respect to Plaintiffs' Fourth Amendment claims, *see* Dkt. Nos. 50 & 51, followed by a third and final order from the Court on Defendants' motion to dismiss in early 2015. (Dkt. No. 56.)

Plaintiffs filed an amended complaint, clarifying both the factual and legal bases for this action. (Dkt. No. 60.) Plaintiffs now raise claims only under the First Amendment. First, Plaintiffs claim that CBP's policies are prior restraints that violate the First Amendment because they require advance permission to take photographs of matters of public interest exposed to public view in outdoor areas of port of entry property and provide unlimited discretion for CBP officials to grant or deny permission to take such photographs. (FAC ¶ 119.) Second, Plaintiffs claim that, as enforced by CBP, the Policy and Ground Rules violate the First Amendment by unreasonably restricting Plaintiffs' right to take photographs of matters of public interest exposed to public view from outdoor areas of port of entry property, regardless of the nature of the forum. (*Id.* ¶¶ 121–22, 124–25.)

## II.    Legal Standard for Deciding Motion to Dismiss

To decide the present motion, the Court must consider only the amended complaint, which supersedes the original. *Ramirez v. City of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015). In determining whether to dismiss a complaint for failure to state a claim, a court must examine "whether the complaint's factual

---

[2]   As Plaintiffs have omitted Fourth Amendment claims from the amended complaint, the Court's prior rulings on those claims are not discussed here.

allegations, together with all reasonable inferences, state a plausible claim for relief." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011). The Court must accept as true the facts in the complaint and consider only the pleadings, exhibits to the complaint, and matters subject to judicial notice. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

Notably, the plausibility standard is not a "probability requirement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

A court's "factual findings entered in connection with the denial of [a] preliminary injunction are not binding on the Court in considering a motion to dismiss…. Nor are the conclusions of law entered in connection with the injunction considered the law of the case." *Bowers v. NCAA*, 9 F. Supp. 2d 460, 466 n.3 (D.N.J. 1998) (citation omitted); *cf. Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits").

## III. Argument

The "law of the case" doctrine does not preclude this Court from considering its prior rulings before judgment or appeal. The Court is therefore free to decide the merits of whether Plaintiffs state a claim. On the facts pleaded, Plaintiffs state claims that the Policy and Ground Rules are unconstitutional prior restraints in a public or nonpublic forum and that enforcement of the Policy and Ground Rules against Plaintiffs violates the First Amendment.

**A. Properly Understood, the "Law of the Case" Doctrine Does Not Prevent the Court from Deciding Whether Plaintiffs State a Claim under the First Amendment.**

Defendants ignore controlling precedent by asserting that Plaintiffs' claims are "barred" or "precluded" by "law of the case." As the Ninth Circuit recently confirmed, however, "the law of the case doctrine" never "bars district courts from reconsidering pretrial rulings" before judgment or appeal, because "[i]t makes no sense to say … that if a district court realizes an earlier ruling was mistaken, it can't correct it, but must instead wait to be reversed on appeal." *Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014) (en banc), *cert. denied*, 135 S. Ct. 946 (2015).

Although a trial court may not "reconsider a question decided by an appellate court," the law of the case doctrine "is wholly inapposite" to the present motion, because "[t]he doctrine simply does not impinge upon a district court's power to reconsider its own interlocutory order provided that the district court has not been divested of jurisdiction over the order." *City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 889 (9th Cir. 2001). Therefore, as the Ninth Circuit has made abundantly clear, "<u>[a]ll rulings of a trial court are subject to revision at any time before the entry of judgment</u>." *Id.* (emphasis in original).

That principle applies especially to "[r]ulings on the sufficiency or amendment of pleadings," which "are easily modified or retracted, in keeping with the generally subordinate role played by pleading in modern practice." 18B Wright & Miller, *Fed. Prac. & Proc. Juris.* § 4478.1 (2d ed.). Accordingly, before judgment or appeal, district courts can and do reconsider issues decided on a previous motion to dismiss. *See, e.g.*, *Rocky Mountain Farmers Union v. Goldstene*, 843 F. Supp. 2d 1042, 1060 (E.D. Cal. 2011), *aff'd*, 730 F.3d 1070 (9th Cir. 2013) (rejecting argument that court "cannot reconsider the legal conclusions set forth in its Motion to Dismiss Order because those legal conclusions are the law of the case"); *In re Sony Grand Wega KDF-E A10/A20 Series Rear Proj. HDTV TV Litig.*, 758 F. Supp. 2d 1077, 1098 (S.D. Cal. 2010) (although the court had previously ruled on claim, "the law of the case doctrine does not bar the [c]ourt from considering … motion to dismiss" similar claim from amended complaint). As

Defendants' own authority acknowledges, when a court decides a motion to dismiss claims in an amended complaint, "the law-of-the-case doctrine does not mandate [the] Court to adopt … prior findings" on similar claims. *Goodrich & Pennington Mortg. Fund, Inc. v. Chase Home Fin., LLC*, No. 05CV636 (JLS), 2008 WL 698464, at *5 (S.D. Cal. Mar. 14, 2008).[3]

Defendants incorrectly rely on cases that address only the trial court's duty to comply with previous rulings of an appellate court in the same case. *Thomas v. Bible*, 983 F.2d 152, 155 (9th Cir. 1993) (reversing district court's fee award to defendants because Ninth Circuit had "previously determined that [plaintiff's] action was not frivolous"); *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 834 (9th Cir. 1982) (noting that "decision of a legal issue or issues by an appellate court establishes the 'law of the case' and must be followed in all subsequent proceedings in the same case in the trial court" and reversing district court ruling that "was directly contrary" to Ninth Circuit's previous decision). In those cases, "the appellate court's determination was binding on the district court," and "became the controlling law of the case." *U.S. v. Smith*, 389 F.3d 944, 950 (9th Cir. 2004). By contrast, "the district court here retain[s] jurisdiction over all issues in the case." *Id.* As a result, neither *Thomas* nor *Moore* disturbs this Court's "inherent procedural power to reconsider" a decision before judgment or appeal. *Santa Monica Baykeeper*, 254 F.3d at 889.

---

[3] *Three Rivers Provider Network, Inc. v. Meritain Health Inc.*, No. 07CV1900 WQH (BLM), 2008 WL 4200587 (S.D. Cal. Sept. 10, 2008) does not help Defendants. As explained in that summary order, plaintiff filed a "second amended complaint" with claims the court had previously dismissed. *Id.* at *1. When defendants asked to conform the complaint to the court's order, plaintiff responded that the "request is unnecessary," presumably because the error was inadvertent. *Id.* As a result, the court declined to order the superfluous filing of a "third amended complaint." *Id.* at *2. *Three Rivers* does not undermine controlling precedent that a district court may always reconsider previous rulings before judgment or appeal.

Because this case has <u>not</u> been appealed, it is irrelevant whether it meets the "conditions" under which a trial court may reopen a question decided by an appellate court, such as new "evidence on remand." *Thomas*, 983 F.2d at 155. In any event, the amended complaint includes new facts; clarifies and updates the geographic locations at issue; and alleges both Plaintiffs' desire and intent to resume photographing matters exposed to public view at the ports of entry but for CBP's policies and actions. In addition, the amended complaint clarifies which CBP policies are challenged, and how those policies, as enforced against each Plaintiff, violate the First Amendment. In light of the procedural history of this case, which involves multiple orders addressing different issues, Plaintiffs respectfully request that the Court issue a single order deciding whether the amended complaint states a claim under the First Amendment, either allowing the case to proceed as now pleaded or making a clean record for appeal. Nothing about the law of the case doctrine precludes the Court from doing so.

**B. Plaintiffs State Claims Under the First Amendment.**

Plaintiffs seek to exercise their First Amendment right to photograph matters of public interest exposed to public view in outdoor areas of port of entry property. On the facts pleaded, Defendants are violating that First Amendment right.

**1. The First Amendment Protects the Right to Photograph Matters of Public Interest Exposed to Public View, Including Government Officials Engaged in Their Duties in Public Places.**

The First Amendment right to freedom of speech includes "the right to film matters of public interest." *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995). In particular, it protects the filming of "government officials engaged in their duties in a public place, including police officers performing their response-bilities[.]" *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011); *see also, e.g.*, *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012) (audiovisual recording of police "is necessarily included within the First Amendment's guarantee of speech and

press rights"); *Smith v. Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) ("The First Amendment protects the right to gather information about what public officials do on public property," including right "to photograph or videotape police conduct"); *Robinson v. Fetterman*, 378 F. Supp. 2d 534, 542 (E.D. Pa. 2005) ("[v]ideotaping is a legitimate means of gathering information for public dissemination and can often provide cogent evidence" of misconduct).

With more than 60,000 employees, CBP "is one of the world's largest law enforcement organizations."[4] (FAC ¶ 24.) CBP officials are bound to enforce and abide by the Constitution. *See, e.g.*, *Securing Our Borders: Hearing Before Subcomm. on Border & Maritime Sec. of H. Comm. on Homeland Sec.*, 112th Cong. 8 (2011) (testimony by Michael J. Fisher, Chief, U.S. Border Patrol), *available at* bit.ly/1nlUes9 ("Clearly, as law enforcement officers, we are bound by oath and by the Constitution…."). CBP is therefore subject to the First Amendment right to record official conduct.

The right to record law enforcement is especially critical because officers have "substantial discretion that may be used to deprive individuals of their liberties." *Glik*, 655 F.3d at 82. At the border, the abuse of persons by CBP has been rampant. (FAC ¶ 6.) CBP's excessive use of force has resulted in a record number of deaths. (*Id.*) For example, CBP officers killed Anastasio Hernandez Rojas at the San Ysidro port of entry in May 2010—and then demanded that eyewitnesses hand over cell phones or delete videos of the incident. (*Id.* ¶ 18.)

Indeed, CBP routinely refuses to disclose whether officers engaged in misconduct are disciplined, shielding both the agency and individual officials from public accountability. (*Id.* ¶ 5.) CBP abuses and the agency's lack of transparency have fueled the public's interest in monitoring and recording CBP officials' public

---

[4] *See* About CBP, U.S. Customs and Border Protection, http://www.cbp.gov/about (last visited Jan. 30, 2016).

- 14 -

actions, including at ports of entry. (*Id.* ¶ 6.) Protecting "the public's right to gather information about their officials not only aids in the uncovering of abuses, but also may have a salutary effect on the functioning of government more generally"— especially when "many of our images of current events come from bystanders with a ready cell phone or digital camera." *Glik*, 655 F.3d at 82–84.

In this action, both Plaintiffs seek to exercise their First Amendment right to record matters of public interest at ports of entry. Mr. Askins wants to continue to photograph matters exposed to public view in outdoor areas of the Calexico port of entry, including vehicular traffic and CBP officers performing their duties, to document environmental pollution and human rights abuses. (FAC ¶¶ 54, 67.) Likewise, Mr. Ramirez wants to continue to photograph matters exposed to public view in outdoor areas of the San Ysidro port of entry to document civil and human rights violations, as he does throughout the border region. (*Id.* ¶¶ 83, 110.)

Plaintiffs' political speech documenting CBP operations lies at the very heart of the First Amendment. *See, e.g.*, *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 131 S. Ct. 2806, 2828 (2011); *Butterworth v. Smith*, 494 U.S. 624, 632 (1990); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 913 (1982). Expressive activity critical of government can warrant certain impositions on public officials. *See, e.g.*, *City of Houston v. Hill*, 482 U.S. 451, 462–63 (1987) ("[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state"); *see also Glik*, 655 F.3d at 84 ("In our society, police officers are expected to endure significant burdens caused by citizens' exercise of their First Amendment rights.").

### 2. Defendants' Policy and Ground Rules, Both As Written and As Enforced Against Each Plaintiff, Violate the First Amendment.

The government's ability to limit protected speech on public property depends on the nature of the forum in which that speech occurs. *Cornelius v.*

*NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 797 (1985). On one end of the spectrum is the traditional public forum, where "the government's ability to permissibly restrict expressive conduct is very limited." *U.S. v. Grace*, 461 U.S. 171, 177 (1983). At the other end is a nonpublic forum, but even there, restrictions on speech are unconstitutional unless they are reasonable and viewpoint neutral. *Cornelius*, 473 U.S. at 797. On the facts pleaded, Plaintiffs state claims that CBP's policies violate the First Amendment regardless of the nature of the forum.

> ### a. To the Extent Plaintiffs Seek to Exercise Their First Amendment Rights from Public Forums, CBP's Policies Are Not Content Neutral or Narrowly Tailored and Do Not Leave Open Ample Alternative Channels for Plaintiffs' Expression.

Plaintiffs want to take photographs in areas over which CBP asserts jurisdiction that qualify as traditional public forums. In Mr. Askins's case, he wants to take photographs from the same or similar location as where he previously did—for example, the shoulder of a public street in Calexico. In Mr. Ramirez's case, he seeks to take photographs from the transit plaza on San Ysidro Boulevard and the adjacent sidewalk. Those areas are public forums open to speech and expressive activity by tradition and past usage. (FAC ¶¶ 52, 107(a).) *See, e.g.*, *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 945 (9th Cir. 2011) (public streets and sidewalks are "the archetype of a traditional public forum") (quotation marks and citation omitted).

Defendants have enforced and will continue to enforce the Policy and Ground Rules against Plaintiffs in these areas. (FAC ¶¶ 57–65; 90–96.) Defendants' assertion of authority to require a permit in these areas, however, does not convert them into nonpublic forums. *See U.S. v. Marcavage*, 609 F.3d 264, 278 n.9 (3d Cir. 2010) (sidewalk was not "a nonpublic forum simply because the [government] had jurisdiction over it and the authority and discretion to issue permits"). The government "may not by its own *ipse dixit* destroy the 'public forum' status of streets and parks which have historically been public forums." *Grace*, 461 U.S. at

180. As traditional public forums, the street shoulder, sidewalk, and plaza areas at issue remain "open for expressive activity regardless of the government's intent." *Ark. Educ. TV Comm'n v. Forbes*, 523 U.S. 666, 678 (1998). Because each is "used for open public access or as a public thoroughfare," each is "inherently compatible" with expressive activity regardless of any assertions about their "primary purpose," and thus Plaintiffs state a claim that each is a traditional public forum. *ACLU of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1101–02 (9th Cir. 2003).

Because they require advance permission from the government before taking photographs, the Policy and Ground Rules are prior restraints on speech in a public forum. (FAC ¶¶ 8, 10.) *See Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1023 (9th Cir. 2009) [hereinafter *Peace Network*]. In public forums, prior restraints on speech "are disfavored and carry a heavy presumption of invalidity." *Id.* at 1023 (quotation marks and citation omitted). Prior restraints are disfavored because they place hurdles in the way of protected speech and eliminate anonymous or spontaneous speech, both of which are central to the First Amendment. *Berger v. City of Seattle*, 569 F.3d 1029, 1051 (9th Cir. 2009).

To survive First Amendment scrutiny, restrictions on speech in public forums, prior restraints or otherwise, must be content neutral, narrowly tailored to a significant governmental interest, and leave open ample alternative channels for communication. *Peace Network*, 574 F.3d at 1023–24. Also, a permit requirement for speech may not delegate overly broad licensing discretion to a government official or allow unlimited time to grant or deny the permit. *Forsyth Cnty v. Nationalist Movement*, 505 U.S. 123, 130 (1992); *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 227 (1990). The Policy and Ground Rules fail every element of this test, both as written and as enforced against each Plaintiff.

First, CBP's policies are improperly based on the content of speech. "A regulation is content-based … if the regulation, by its very terms, singles out particular content for differential treatment." *Berger*, 569 F.3d at 1051; *see also*

*Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015) ("Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed."). By asserting authority to approve photography based on its compatibility with CBP's mission, the policies make permission "depend entirely on the communicative content" of the photographs, and therefore are "content based on [their] face."[5] *Reed*, 135 S. Ct. at 2227.

A content-based restriction on speech is constitutional only if it can "survive strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Id.* at 2231. Here, Plaintiffs state a claim that the policies are not narrowly tailored to serve a compelling governmental interest, as applied to photography in outdoor areas of matters exposed to public view. Even "border security" (if a compelling governmental interest) must be limited to a narrow category of interests (such as privacy). Assuming CBP has an interest in preventing the public from photographing certain matters consistent with that narrow category of interests, it can further that objective by concealing those matters indoors or keeping them otherwise obscured from view. CBP may not, however, resort to the blunt instrument of prohibiting <u>all</u> outdoor photography <u>anywhere</u> on port of entry property.

Second, even if they are content-neutral, CBP's policies are not narrowly tailored to serve a significant governmental interest. Again, assuming that "border security" is such an interest, the Policy and Ground Rules sweep far too broadly by banning an entire medium of speech. But "a complete ban can be narrowly tailored … only if each activity within the proscription's scope is an appropriately targeted

---

[5] It is no answer to suggest that the term "mission" applies to viewpoint rather content. "Government discrimination among viewpoints—or the regulation of speech based on the specific motivating ideology or opinion or perspective of the speaker—is a more blatant and egregious form of content discrimination." *Reed*, 135 S. Ct. at 2230 (quotation marks and citation omitted).

evil." *Frisby v. Schultz*, 487 U.S. 474, 485 (1988). CBP's blanket prohibition on all photography by all people at all outdoor parts of every port of entry fails this test. *Berger*, 569 F.3d at 1041 (holding that permitting rule was not narrowly tailored, in part, because it "applies, on its face, to an extraordinarily broad group of individuals, the vast majority of whom are not responsible for the 'evil' the [government] seeks to remedy."); *Peace Network*, 574 F.3d at 1025 ("Expansive language can signal the absence of a close fit with the governmental interests underlying the permitting requirement.") (quotation marks and citation omitted).

Additionally, although the government's chosen mechanism "need not be the least restrictive or least intrusive means available," "the existence of obvious, less burdensome alternatives is a relevant consideration in determining whether the fit between ends and means is reasonable." *Berger*, 569 F.3d at 1041 (quotation marks and citations omitted). Here, too, Plaintiffs state a claim that CBP's policies violate the First Amendment. For example, CBP could promote border security by limiting photography or other recording in certain specific, restricted areas where sensitive materials are present (e.g., inside port of entry buildings or in other secure areas). CBP could also enforce "an appropriately worded prohibition on aggressive behavior" or other specific interference with official activities at ports of entry. *Berger*, 569 F.3d at 1053; *cf. Glik*, 655 F.3d at 80, 84 (upholding right to film arrest in progress from "comfortable remove" of "roughly ten feet away," because "peaceful recording of an arrest in a public space that does not interfere with the police officers' performance of their duties is not reasonably subject to limitation"). CBP's current approach disregards obvious alternatives and is thus not narrowly tailored.

Third, CBP's blanket prohibition on all photography at ports of entry does not leave open any (much less ample) alternative channels for Plaintiffs' expressive activities. "Several considerations are relevant to [the ample alternatives] analysis." *Peace Network*, 574 F.3d at 1025 (quotation marks and citations omitted). An

"alternative is not ample if the speaker is not permitted to reach the intended audience." *Id.* CBP's Policy and Ground Rules, both as written and as enforced against each Plaintiff, operate to silence Plaintiffs in their efforts to use photographs to raise public awareness about CBP activities at ports of entry, which are of pressing public interest. Also, "if the location of the expressive activity is part of the expressive message, alternative locations may not be adequate." *Id.* (quotation marks and citations omitted). Each Plaintiff's expressive message is specific to border-related rights abuses and other government misconduct at ports of entry. Finally, "[courts] consider the opportunity for spontaneity in determining whether alternatives are ample, particularly for political speech." *Id.* Here, even if CBP made clear when and how it would exercise its discretion to grant or deny approval for photography, the public would have no way to make spontaneous recordings of events, losing a crucial mechanism for documenting official conduct.

Fourth, with respect to unbridled discretion, the Ninth Circuit has explained that regulations "must contain narrow, objective, and definite standards to guide the licensing authority," and must require the official "to provide an explanation for his decision." *Id.* (quotation marks, alterations, and citations omitted). Yet neither the Policy nor the Ground Rules specify <u>any</u> objective or definite standards or criteria limiting CBP officials' discretion to grant or deny permission to take photographs at or near port of entry property. (FAC ¶¶ 9–10.) Nor do these policies require any CBP official to explain any decision, if one is ever reached.

Fifth, neither the Policy nor the Ground Rules impose any time limit for a determination by CBP officials to allow photography. A "prior restraint "that fails to set reasonable time limits … creates the risk of indefinitely suppressing permissible speech" and is therefore unconstitutional. *FW/PBS*, 493 U.S. at 227; *cf. Riley v. Nat'l Fed'n of Blind of N.C., Inc.*, 487 U.S. 781, 802 (1988) (indefinite delay in permit approval unconstitutionally "compels the speaker's silence").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**b. To the Extent Defendants Apply Their Policy and Ground Rules to Nonpublic Forums At Ports of Entry, These Restrictions Are Unreasonable and Are Not Viewpoint Neutral.**

Prior restraints or otherwise, government restrictions on protected speech in nonpublic forums "must be (1) reasonable in light of the purpose served by the forum and (2) viewpoint neutral." *Kaahumanu v. Hawaii*, 682 F.3d 789, 800 (9th Cir. 2012) (quotation marks and citation omitted). To the extent CBP applies its Policy and Ground Rules to nonpublic forums at ports of entry, Plaintiffs state claims that they are neither reasonable nor viewpoint neutral.

"The 'reasonableness' requirement for restrictions on speech in a nonpublic forum requires more of a showing than does the traditional rational basis test." *Sammartano v. First Judicial Dist. Ct.*, 303 F.3d 959, 966–67 (9th Cir. 2002), *abrogated on other grounds by Winter v. NRDC*, 555 U.S. 7 (2008). It is not enough to show "the regulation is rationally related to a legitimate governmental objective." *Id.* Instead, "there must be evidence that the restriction reasonably fulfills a legitimate need." *Id.* (quotation marks and citations omitted). Thus, even in a nonpublic forum, the court must make an "independent determination" whether the government's rules and application thereof "are reasonably related to the government's policy objectives." *United Food & Comm. Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 357 (6th Cir. 1998).

To the extent CBP's Policy and Ground Rules purport to further "border security" and port of entry operations, they are unreasonable because they restrict all photography, not just photography by persons who are disruptive or impede CBP officers. *Cf. Cornelius*, 473 U.S. at 811 ("The First Amendment does not forbid a viewpoint-neutral exclusion of speakers who would disrupt a nonpublic forum and hinder its effectiveness for its intended purpose.") (emphases added). On the facts pleaded, neither Plaintiff posed a threat to safety or interfered with CBP officers. (FAC ¶¶ 60, 98.) Additionally, CBP's Policy and Ground Rules are unreasonable insofar as they prohibit photography of matters exposed to public

view that could also be photographed from off port of entry property. As to such matters, they cannot and do not "fulfill[] a legitimate need" in protecting security, because they do not prevent photography of anything that cannot be otherwise recorded. *Sammartano*, 303 F.3d at 967. Therefore, CBP's Policy and Ground Rules are unconstitutional as applied to Plaintiffs.

Nor can Defendants prevail by arguing that Plaintiffs could just as easily photograph matters exposed to public view from outside port of entry property.[6] It is bedrock law that "one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place." *Schneider v. New Jersey*, 308 U.S. 147, 163 (1939).

Finally, CBP's Policy and Ground Rules improperly permit viewpoint discrimination. Even in nonpublic forums, viewpoint "neutrality requires not just that a government refrain from explicit viewpoint discrimination, but also that it provide adequate safeguards to protect against the improper exclusion of viewpoints." *Child Evangelism Fellowship of Md., Inc. v. Montgomery Co. Pub. Sch.*, 457 F.3d 376, 384 (4th Cir. 2006). Where, as here, a policy for access to a nonpublic forum allows unbridled discretion and thus "offers no protection against the discriminatory exercise of . . . discretion, it creates too great a risk of viewpoint discrimination to survive constitutional scrutiny." *Id.* at 389.

Although CBP purports to permit photography "without favoritism," the agency expressly reserves the right to prohibit any photography that "compromis[es] the DHS/CBP mission." (FAC Exh. A, ¶ 3.1.) That exception improperly threatens to swallow the rule. To assert the right to prohibit speech based on an agency's understanding of its "mission" would give that agency "a license to suppress speech on political and social issues based on disagreement with

---

[6] If there are factual disputes about what is visible from outside port property, such disputes cannot be resolved on a motion to dismiss. *See, e.g.*, *Stewart v. Dist. of Columbia Armory Bd.*, 863 F.2d 1013, 1018 (D.C. Cir. 1988).

the viewpoint expressed," which "strikes at the very heart of the First Amendment." *Morse v. Frederick*, 551 U.S. 393, 423 (2007) (Alito, J., concurring).

Importantly, even if CBP does not in fact exercise this limitless discretion to ban photography, such "discretionary power is inconsistent with the First Amendment" because "the potential for the exercise of such power exists." *Kaahumanu*, 682 F.3d at 807. This danger is highlighted by the fact that, by definition, CBP's policies prohibit any spontaneous, "unauthorized" photography of abuses committed by CBP officers, while allowing "authorized" photography of matters deemed acceptable by CBP. As demonstrated by Mr. Ramirez's experience, not to mention the killing of Anastasio Hernandez Rojas, it is impossible to seek and receive advance permission to photograph or videotape CBP conduct. This kind of viewpoint discrimination, actual or latent, cannot survive First Amendment scrutiny, even in a nonpublic forum, especially given the fundamental interest in holding government officials accountable for their conduct.

### C. Plaintiffs Have Standing to Challenge Defendants' Restrictions of Their First Amendment-Protected Activities.

To decide standing on the pleadings, the court must accept as true all material facts pleaded and construe the complaint in favor of Plaintiffs. *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011). Standing requires actual or imminent injury caused by Defendants' conduct that is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). "Constitutional challenges based on the First Amendment present unique standing considerations" due to the "sensitive nature of constitutionally protected expression." *Ariz. Right to Life Polit. Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003.

A "chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury." *Libertarian Party of L.A. City v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013). Therefore, when a challenged policy "implicates

First Amendment rights, the inquiry tilts dramatically toward a finding of standing," and plaintiffs need not "await the consummation of threatened injury to obtain preventive relief." *Bayless*, 320 F.3d at 1006. It is "sufficient for standing purposes that the plaintiff intends to engage in 'a course of conduct arguably affected with a constitutional interest' and that there is a credible threat that the challenged provision will be invoked against the plaintiff." *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154–55 (9th Cir. 2000). Under that standard, Plaintiffs have standing.

First, Plaintiffs challenge the Policy and Ground Rules as invalid prior restraints, which inherently chill their speech. *Kaahumanu*, 682 F.3d at 796 ("Plaintiffs who challenge a permitting system are not required to show that they have applied for, or have been denied, a permit…. Plaintiffs must only have declined to speak, or have modified their speech, in response to the permitting system.") (citations omitted); *Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 895 (9th Cir. 2007) ("the threat of the prior restraint itself constitutes the injury-in-fact").

Second, Plaintiffs want to take photographs on port of entry property, but they are refraining from doing so because there is a credible threat CBP will enforce the Policy and Ground Rules against them. This is not a "hypothetical" concern. CBP officers have already enforced the Policy and Ground Rules against Plaintiffs, and there is every reason to believe they would do so again. The existence of the Policy and Ground Rules and CBP's actions create "an actual and well-founded fear" that CBP will again enforce them. *Libertarian Party*, 709 F.3d at 870. As a result, Plaintiffs are censoring their own speech. This "self-censorship" is "a constitutionally sufficient injury" caused by Defendants' conduct that a favorable judgment would redress; accordingly, Plaintiffs have standing. *Id.*; *see also Faustin v. City, Cnty. of Denver*, 268 F.3d 942, 950 (10th Cir. 2001) (plaintiff had standing to challenge policy excluding her speech from overpass).

The passage of time since Plaintiffs suffered enforcement makes no difference. The Policy and Ground Rules remain in effect, and Defendants "have not disavowed their intent" to enforce them, further demonstrating that Plaintiffs have a well-founded fear of enforcement. *LSO*, 205 F.3d at 1155. Plaintiffs have not expressed a vague intent "some day, to return" to a CBP port of entry. *Cf. Lujan*, 504 U.S. at 564 n.2. They want to resume taking photographs now and would do so but for the Policy and Ground Rules. (FAC ¶¶ 66, 113.) Therefore, this is not a case of "speculative fear" based on a "highly attenuated chain of possibilities" that Defendants will enforce speech restrictions. *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1148 (2013). Defendants have a written policy prohibiting the speech in which Plaintiffs want to engage, and Defendants have in fact enforced that policy against Plaintiffs, making it likely if not certain they would enforce it again. *See Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001) ("[W]here the harm alleged is directly traceable to a written policy, there is an implicit likelihood of its repetition."). As a result, Plaintiffs are censoring their speech due to reasonable fear of enforcement. On those facts, Plaintiffs state a "claim of specific present objective harm or a threat of specific future harm" sufficient to create standing. *Laird v. Tatum*, 408 U.S. 1, 14 (1972).

**Conclusion**

For the foregoing reasons, the Court should deny Defendants' motion to dismiss Plaintiffs' amended complaint.


Dated: February 1, 2016                    By:  **s/ Mitra Ebadolahi**
                                                 MITRA EBADOLAHI
                                                 mebadolahi@aclusandiego.org