UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAY ASKINS and CHRISTIAN RAMIREZ,<br><br>                              Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>                              Defendants. | Case No.:  3:12-cv-2600-W-AHG<br><br>**JOINT STIPULATION OF SETTLEMENT AND MOTION FOR ORDER OF APPROVAL** |

WHEREAS, Plaintiffs Ray Askins and Christian Ramirez ("Plaintiffs") filed a Second Amended Complaint against Defendants United States Department of Homeland Security ("DHS"); General Services Administration ("GSA"); Federal Protective Service ("FPS"); Mark A. Morgan, Acting Commissioner of U.S. Customs and Border Protection; Emily W. Murphy, Administrator of the General Services Administration; L. Eric Patterson, Director of the Federal Protective Service; David A. Salazar, Port Director of the Calexico Port of Entry; and Sidney K. Aki, Port Director of the San Ysidro Port of Entry (collectively, "Defendants") in the above-captioned action on June 10, 2019 (ECF No. 108), alleging violations of their constitutional rights through the implementation and

enforcement of certain policies, practices, regulations, and signage that prohibit photography at land ports of entry; and

WHEREAS, the parties wish to resolve this action without further litigation;

IT IS HEREBY STIPULATED AND AGREED by and among the parties that the action shall be resolved as follows:

1. Defendants shall not prevent, impede, or otherwise interfere with the First Amendment rights of members of the public to make and retain photographs, video recordings, or other recordings of matters or events from a Publicly Accessible Area (as defined below) at any land port of entry in the United States, except as permitted in this Joint Stipulation of Settlement ("Stipulated Settlement").

2. Definitions.
   a. "DHS Defendants" as used herein refers to (1) the United States Department of Homeland Security ("DHS") and its components, including but not limited to U.S. Customs and Border Protection ("CBP") and Federal Protective Service ("FPS"); and (2) all personnel, employees, agents, contractors, officers, or any other persons acting under the control of, or on behalf of, DHS or its components at a land port of entry.
   b. A "Publicly Accessible Area" as used herein is an outdoor area at a land port of entry where a member of the public is permitted to be regardless of whether they intend to cross the United States border.
   c. A "Restricted Access Area" as used herein is: (1) any area within a land port of entry's boundaries that is used regularly by DHS Defendants to process or inspect individuals or vehicles crossing an international border, including any outdoor areas to which members of the public generally do not have access unless they are crossing the United States border; and (2) any indoor facility owned or operated by Defendants at a land port of entry.

3. DHS Defendants shall not construe or enforce any policy, rule, directive, or practice (including but not limited to 41 C.F.R. Part 102-74, Subpart C; CBP's Security

Policy and Procedures Part 11.19; CBP Directive No. 5410-0001B; CBP's Ground Rules for New Media Production; DHS's Instruction of the Participation of DHS with Film and Television Productions, or DHS Directives System Instruction No. 109-10-001) against members of the public at a land port of entry in a manner inconsistent with this Stipulated Settlement. DHS Defendants shall not require members of the public to obtain prior authorization to make and retain photographs, video recordings, or other recordings of matters or events from a Publicly Accessible Area at any land port of entry in the United States. DHS Defendants shall not unlawfully seize, delete, destroy, alter, or otherwise inhibit any individual's access to photographs, video recordings, or other recordings taken from a Publicly Accessible Area at any land port of entry in the United States.

4. DHS Defendants shall provide a written instruction ("Written Instruction") to all personnel, employees, agents, contractors, officers, or any other persons acting under the control of, or on behalf of, DHS Defendants operating at any land port of entry stating that, consistent with the terms of this Stipulated Settlement, they shall not prevent, impede, or otherwise interfere with the First Amendment rights of members of the public to make and retain photographs, video recordings, or other recordings of matters or events from a Publicly Accessible Area at any land port of entry in the United States. The text of the Written Instruction must be consistent with the terms of this Stipulated Settlement, and shall include the following language:

> The Government has reached a settlement of litigation regarding the ability of members of the public to take photographs and make video recordings in publicly accessible areas at land ports of entry. As part of that settlement, the Government has agreed that:
>
> > a. The following terms apply to all personnel, employees, agents, contractors, officers, and any other persons at land ports of entry acting under the control of or on the behalf of the Department of Homeland Security and its components, including but not limited to U.S. Customs and Border Protection and Federal Protective Service.

b. The Department of Homeland Security and its components, including but not limited to U.S. Customs and Border Protection and Federal Protective Service, shall not prevent, impede, or otherwise interfere with the First Amendment rights of members of the public to make and retain photographs, video recordings, or other recordings of matters or events from a Publicly Accessible Area at any land port of entry in the United States. A Publicly Accessible Area is an outdoor area at a land port of entry where a member of the public is permitted to be regardless of whether they intend to cross the United States border.

c. The Department of Homeland Security and its components, including but not limited to U.S. Customs and Border Protection and Federal Protective Service, shall not require members of the public to obtain prior authorization to make and retain photographs, video recordings, or other recordings of matters or events from a Publicly Accessible Area at any land port of entry in the United States.

d. The Department of Homeland Security and its components, including but not limited to U.S. Customs and Border Protection and Federal Protective Service, shall not unlawfully seize, delete, destroy, alter, or otherwise inhibit any individual's access to photographs, video recordings, or other recordings taken from a Publicly Accessible Area at any land port of entry in the United States.

e. The Department of Homeland Security and its components, including but not limited to U.S. Customs and Border Protection and Federal Protective Service, shall not construe or enforce any policy, rule, directive, or practice (including but not limited to 41 C.F.R. Part 102-74, Subpart C; CBP's Security Policy and Procedures Part 11.19; CBP Directive No. 5410-0001B; CBP's Ground Rules for New Media Production; DHS's Instruction of the Participation of DHS with Film and Television Productions, or DHS Directives System

Instruction No. 109-10-001) against members of the public at a land port of entry in a manner inconsistent with these terms.

    f.   The act of taking photographs, video recordings, or other recordings from a Publicly Accessible Area is not unlawful activity and, without more, shall not constitute reasonable suspicion or probable cause of unlawful activity. However, officers may take any legally permissible law enforcement action, including but not limited to taking lawful steps to ascertain whether unlawful activity, or reconnaissance for the purpose of a terrorist or unlawful act, is being undertaken.

    g.   The Department of Homeland Security and its components, including but not limited to U.S. Customs and Border Protection and Federal Protective Service, may continue to restrict photography or other recordings in Restricted Access Areas. A Restricted Access Area is: (1) any area within a land port of entry's boundaries that is used regularly by the Department of Homeland Security and its components to process or inspect individuals or vehicles crossing an international border, including any outdoor areas to which members of the public generally do not have access unless they are crossing the United States border; and (2) any indoor facility owned or operated by the Department of Homeland Security or General Services Administration at a land port of entry.

5.    The Written Instruction shall be disseminated three times: (1) within ten (10) business days of dismissal of this case; (2) within ninety (90) days of dismissal of this case; and (3) one year after the first dissemination. Within ten (10) business days of each dissemination, DHS Defendants operating at any land port of entry shall provide counsel for Plaintiffs: (1) a true, correct, and complete copy of the Written Instruction as disseminated; and (2) a certification that confirms the date and manner in which the Written Instruction was disseminated.

6.    Within 180 days of entry of the Order approving this Stipulated Settlement, GSA and DHS Defendants operating at any land port of entry shall remove all signage

currently posted in Publicly Accessible Areas at any land port of entry that is inconsistent with this Stipulated Settlement. Also within 180 days of entry of the Order approving this Stipulated Settlement, GSA and DHS Defendants operating at any land port of entry shall provide a certification to counsel for Plaintiffs that they have completed the removal of signage required under this Stipulated Settlement.

     7. Nothing in this Stipulated Settlement shall preclude the DHS Defendants from taking any legally permissible law enforcement action, including but not limited to taking lawful steps to ascertain whether unlawful activity, or reconnaissance for the purpose of a terrorist or unlawful act, is being undertaken. Taking a legally permissible law enforcement action, without more, does not constitute preventing, impeding, or otherwise interfering with the rights of members of the public to make and retain photographs, video recordings, or other recordings of matters or events from a Publicly Accessible Area under this Stipulated Settlement. The act of taking photographs, video recordings, or other recordings from a Publicly Accessible Area is not unlawful activity and, without more, shall not constitute reasonable suspicion or probable cause of unlawful activity.

     8. Nothing in this Stipulated Settlement shall preclude the Defendants from construing or enforcing policies that restrict photography, video recordings, or other recordings in Restricted Access Areas of land ports of entry.

     9. Within thirty (30) calendar days after entry of an Order approving this Stipulated Settlement, CBP shall pay Plaintiffs' counsel the sum of $512,500.00 in full satisfaction of any claim for attorney fees or costs.

     10. Compliance with all applicable federal, state, and local tax requirements shall be the sole responsibility of Plaintiffs. This Stipulated Settlement is executed without reliance upon any representation by Defendants as to tax consequences, and Plaintiffs are responsible for the payment of all taxes that may be associated with the settlement payments. Further, nothing in this Stipulated Settlement waives or modifies federal, state, or local law pertaining to taxes, offsets, levies, and liens that may apply to this Stipulated Settlement or the settlement proceeds, and this Stipulated Settlement is executed without

reliance on any representation by Defendants as to the application of any such law.

11. Plaintiffs stipulate and agree to accept the consideration set forth above in full settlement and satisfaction of any and all claims and demands that they or their heirs, executors, successors in interest, administrators, or assigns may have or hereafter acquire against any Defendant on account of the events, circumstances, or incidents giving rise to this action and claims incident thereto. Plaintiffs hereby release and forever discharge all Defendants from any and all claims and liability arising directly or indirectly from the incidents or circumstances giving rise to or referred to in this action, except for any claims related to enforcement of the terms of this Stipulated Settlement.

12. The parties have consented to the continuing jurisdiction of United States Magistrate Judge Allison H. Goddard to enforce the terms of the Stipulated Settlement for a period of five (5) years after dismissal of this action. During this five-year period, Plaintiffs shall not be required to file a separate lawsuit to seek such enforcement. During this five-year period, if the rights of Plaintiffs under this settlement have allegedly been violated, Plaintiffs may additionally present arguments in this action alleging that Defendants have violated the terms of this Stipulated Settlement with respect to any member of the public. Notwithstanding the foregoing, nothing in this Stipulated Settlement is intended either to create any rights in or grant any cause of action to any person not currently a party to this litigation, or to release or waive any claim, cause of action, demand, or defense in law or equity that any party to this litigation may have against any person(s) or entity not a party to this Stipulated Settlement. Accordingly, if Plaintiffs claim that Defendants have violated the terms of this Stipulated Settlement based on a purported violation of the First Amendment rights of a non-party member of the public, such claim may not be raised directly on behalf of such non-party; rather, Plaintiffs, as parties to this Stipulated Settlement, must raise such claim solely on their own behalf within the framework of an alleged breach of the Stipulated Settlement.

13. Plaintiffs shall give Defendants thirty (30) calendar days to cure any alleged non-compliance with this Stipulated Settlement before seeking judicial review of any

claims related to such alleged non-compliance.

14. The parties understand and agree that this Stipulated Settlement contains the entire agreement between them, and that no statements, representations, promises, agreements, or negotiations, oral or otherwise, between the parties or their counsel that are not included herein have any force or effect.

15. The parties hereby jointly move the Court for an Order approving this Stipulated Settlement, and dismissing this action with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), subject to the provisions of this Stipulated Settlement and the continuing jurisdiction of the Court as provided and limited by the Consent to Exercise of Jurisdiction by a United States Magistrate Judge and Order of Reference. If any such Order of the Court extends the Court's jurisdiction beyond the limits set forth in Paragraph 12, the Parties' agreement to this Stipulated Settlement is void.

DATED: September 8, 2020

/s/   Mitra Ebadolahi
Mitra Ebadolahi
David Loy
Sarah Thompson
ACLU Foundation of San Diego &
Imperial Counties
P.O. Box 87131
San Diego, CA 92138-7131
Telephone: (619) 232-2121

Arthur Luk
Sara Murphy D'Amico
Samuel F. Callahan
ARNOLD & PORTER
    KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
Telephone: (202) 942-5000

/s/ Rachael L. Westmoreland

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

BRIGHAM J BOWEN
Assistant Branch Director

RACHAEL L. WESTMORELAND (GA Bar No. 598398)
BRADLEY CRAIGMYLE
Trial Attorneys, Federal Programs Branch
United States Department of Justice, Civil Division
1100 L Street, NW
Washington, DC 20005
Tel: 202-514-1280
Fax: 202-616-8470